CC-97-225                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Laboratorio Clínico Instituto Central de Medicina Avanzada<br>    Demandante-Recurrente<br><br>    V.<br><br>Laboratorio Clínico Borinquen, Inc.<br>    Recurrente-Recurrido<br><br>    V.<br>Departamento de Salud<br>    Recurrido-Peticionario | Certiorari<br><br>99 TSPR 136 |

Número del Caso: CC-1998-695 y 697 Consolidados

Abogados del Dpto. de Salud:        Lcdo. Iris M. Barreto Saavedra
                                     Procuradora General Auxiliar

Abogado de Lab. Borinquen:          Lcdo. José E. Villares Bellavista

Abogado de Lab. Inst. Central:   Lcdo. Raúl Tirado, Hijo

Abogado de Lab. Clínico Cidreño: Lcdo. Edwin Torruellas Iglesias

Agencia: Departamento de Salud

Tribunal de Circuito de Apelaciones: Circuito Regional VI

Juez Ponente: Hon. Pesante Martínez

Fecha: 9/9/1999

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Laboratorio Clínico Instituto
Central Medicina Avanzada
      Demandante-Recurrente

          vs.

Laboratorio Clínico Borinquen,        CC-1998-695      Certiorari
Inc.                                  Ref. CC-1998-697
      Recurrente-Recurrido

          vs.

Departamento de Salud
      Recurrido-Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI


          San Juan, Puerto Rico, a 9 de septiembre de 1999.


          Nos toca determinar si el Secretario de Salud tiene discreción para obviar un criterio reglamentario al otorgar un Certificado de Necesidad y Conveniencia.


                                I

          El 6 de julio de 1995, se presentó ante el Departamento de Salud de Puerto Rico una solicitud para obtener un certificado de necesidad y conveniencia para establecer un laboratorio clínico que estaría localizado en el Km. 0.8 de la carretera número 734 en el Municipio de Cidra. Se conocería como Laboratorio Clínico Instituto Central de Medicina Avanzada. Unas semanas más tarde, el 21 de agosto de 1995, se presentó ante el Departamento de Salud una propuesta similar, para establecer otro laboratorio clínico, que se conocería como Laboratorio Clínico y Bacteriológico Cidreño, a ubicarse en el Km. 0.5 de dicha carretera número

734 en el mismo Municipio de Cidra. El 13 y el 16 de diciembre de 1996 se celebraron vistas sobre ambas propuestas ante la misma oficial examinadora del Departamento de Salud. A dichas vistas compareció el Laboratorio Clínico Borinquen, Inc., para oponerse específicamente a la propuesta relativa al establecimiento del Laboratorio Clínico Instituto Central de Medicina Avanzada.

La oficial examinadora referida rindió un informe a la Secretaria de Salud y recomendó que se otorgara el certificado de necesidad y conveniencia al Laboratorio Clínico Instituto Central de Medicina Avanzada. En cambio, en el informe correspondiente a la propuesta para el establecimiento del Laboratorio Clínico y Bacteriológico Cidreño, la oficial examinadora recomendó que se denegara. La Secretaria de Salud adoptó ambas recomendaciones.

Inconforme con la decisión referida, el Laboratorio Clínico Borinquen, Inc., presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones, el cual expidió el auto solicitado y revocó la resolución de la Secretaria de Salud. Esta, representada por el Procurador General de Puerto Rico, acudió oportunamente ante nos, y planteó la siguiente cuestión:

> ERRO EL TRIBUNAL DE CIRCUITO DE APELACIONES, AL RESOLVER QUE LA SECRETARIA DE SALUD ACTUO EN FORMA ILEGAL, ARBITRARIA E IRRAZONABLE AL CONCEDERLE UN CERTIFICADO DE NECESIDAD Y CONVENIENCIA AL LABORATORIO CLINICO INSTITUTO CENTRAL DE MEDICINA AVANZADA.

Por su parte, el Laboratorio Clínico Instituto Central de Medicina Avanzada también recurrió ante nos mediante su propio recurso de certiorari, y señaló lo siguiente:

1. Erró el Tribunal de Apelaciones al concluir que el Departamento de Salud no tiene autoridad para interpretar el Reglamento Núm. 56.

2. Erró el Tribunal de Circuito de Apelaciones al revocar la Resolución emitida por el Departamento de Salud sin considerar la totalidad de la prueba.

El 9 de diciembre de 1998, mediante sendas resoluciones, le dimos término a la parte recurrida, Laboratorio Clínico Borinquen, Inc., para mostrar causa, si alguna tuviere, por la cual no debíamos expedir los recursos solicitados y revocar el dictamen del foro apelativo. Con el beneficio de la comparecencia de la recurrida, pasamos a resolver, según lo intimado.

II

El Tribunal de Circuito de Apelaciones revocó la determinación de la Secretaria de Salud que aquí nos concierne, al determinar que el laboratorio propuesto no cumplía con el requisito de población, conforme el cual se debía establecer un laboratorio por cada 14,000 habitantes. En lo esencial, los peticionarios sostienen en sus respectivos recursos que la Secretaria de Salud tenía discreción para otorgar el certificado de necesidad y conveniencia, aun cuando no se cumplieron todos los

criterios reglamentarios pertinentes. Veamos si tienen razón.

## A. Normas aplicables

La Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sec. 334 et. seq., conocida como Ley de Certificados de Necesidad y Conveniencia, se adoptó para asegurar la planificación ordenada de las facilidades y servicios de salud. Dicha ley establece la facultad del Secretario de Salud para otorgar certificados de necesidad y conveniencia para el establecimiento de nuevas facilidades de salud, cuando ello sea necesario y conveniente para la población que dichas facilidades van a servir, siempre que no se afecten indebidamente los servicios existentes. Se contribuye así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico, Artículo 1(e), 24 L.P.R.A. sec. 334.

El Artículo 3 de la Ley Núm. 2, 24 L.P.R.A. 334b, dispone que el Secretario de Salud establecerá mediante reglamento los criterios para expedir o denegar el certificado de necesidad y conveniencia. Indica, además, el artículo referido que al establecer los criterios aludidos, el Secretario tomará en consideración: (1) las guías generales establecidas en la ley federal; (2) las establecidas en la propia Ley Núm. 2; (3) la política pública y estrategia de desarrollo adoptada por la Junta de Planificación de Puerto Rico, incluyendo el Plan de

Desarrollo Integral. (4) Finalmente, el Artículo 3 dispone que entre los criterios a establecerse por el Secretario "entrarán los siguientes":

(1)    La relación entre la transacción para la cual se solicita el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.

(2)    La necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán mediante la misma.

(3)    La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.

(4)    La relación entre el sistema de salud operante en el área y la transacción propuesta.

(5)    En el caso específico de solicitantes de certificados de necesidad y conveniencia para el ofrecimiento de servicios de salud, el Secretario deberá considerar también los siguientes factores:

(a)    La disponibilidad de recursos humanos y económicos para el rendimiento eficiente de esos servicios.

(b)    El impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área en donde los servicios habrán de prestarse.

(c)    El porciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. El Secretario deberá exigir que la solicitud indique el tiempo que el solicitante necesitará para hacer disponible el servicio o equipo

objeto de la petición o realizar el gasto objeto de la transacción. 24 L.P.R.A., sec. 334(b).

A tenor con las anteriores disposiciones, el Secretario de Salud adoptó el Reglamento Núm. 56 del 14 de agosto de 1986, que estaba vigente a decidirse el caso ante nos.

Para evaluar las solicitudes de certificados de necesidad y conveniencia, el Reglamento Núm. 56 referido contiene unas guías generales (Artículo V) y unos criterios específicos (Articulo VI). Ambos criterios, los generales y específicos, deben ser considerados al expedir o denegar cualquier propuesta.

El Artículo VI contiene los criterios específicos en torno a dieciséis facilidades de salud que se clasifican en dicho artículo y que el Secretario de Salud deberá considerar al evaluar una solicitud de certificados de necesidad y conveniencia para cada una de dichas facilidades o instituciones. Dicho Artículo VI establece la siguiente norma de hermenéutica:

"Cuando una solicitud compare favorablemente con todos los criterios aplicables, previa la celebración de vista y no haber oposición fundamentada, la solicitud deberá ser aprobada y se otorgará el certificado solicitado. **Cuando la misma no llene uno o más de los criterios aplicables, la solicitud podrá ser denegada**. El proponente deberá presentar la información requerida en su solicitud y suministrar evidencia para probar que se cumple con cada criterio aplicable a su caso. La responsabilidad mayor de producir información necesaria recae en el proponente." (Enfasis suplido).

En el inciso (15) del Artículo VI se establecen los requisitos específicos aplicables a los laboratorios clínicos:

1. La relación de población por laboratorio clínico estará determinada por el grupo al cual pertenezca el municipio del laboratorio propuesto como sigue:

   Categoría I    –    14,000    habitantes por
                            laboratorio

   Categoría II   –    12,000    habitantes por
                            laboratorio

   Categoría III  –    10,000    habitantes por
                            laboratorio

2. La ubicación se evaluará a base del área de servicios dentro del radio de una (1) milla del laboratorio propuesto. Se considerará saturada un área de servicio o un municipio si se sobrepasa del criterio de población aplicable. Disponiéndose que no se denegará el establecimiento de un laboratorio en un área de servicios por la saturación de otras áreas de servicio dentro del mismo municipio. Se podrá tomar en cuenta la densidad poblacional del área, la población transitoria que tiene, si alguna, y las vías de acceso para llegar a la facilidad propuesta.

3. No deberá autorizarse el establecimiento de un nuevo laboratorio clínico o de estación de sangría hasta tanto los laboratorios clínicos del área de servicio sobrepasen un promedio de siete mil (7,000) pruebas por laboratorio anualmente.

4. A las estaciones de sangría se le aplicarán los mismos criterios que a los laboratorios clínicos. A este servicio de estación de sangría se le requerirá un Certificado de Necesidad y Conveniencia.

B. **Determinaciones esenciales del Oficial Examinador**

Con arreglo a la prueba documental y testifical que le fue presentada, la Oficial Examinadora que atendió la solicitud que aquí nos concierne, determinó que el Municipio de Cidra era de Categoría I, al cual le aplicaba el criterio de un laboratorio clínico por cada 14,000 habitantes dentro del radio de una milla del laboratorio propuesto.

Determinó, además, que la población residente y flotante dentro del radio aludido era de 60,752 habitantes, y que el Municipio de Cidra era el de mayor crecimiento en toda la Isla. También determinó que en el radio de una milla, existían ya cuatro laboratorios clínicos, que procesaban 55,214 pruebas anualmente, lo que equivalía a 20,214 pruebas anuales en exceso del mínimo de 7,000 por laboratorio que establece el Reglamento.

Con relación a la propuesta particular del Laboratorio Clínico Instituto Central, concluyó que éste estaría ubicado en las afuera del casco de la ciudad, lo que facilitaría el flujo vehicular hacia el laboratorio; y que a poca distancia del mismo, había un centro comercial, dos escuelas, dos parques industriales y el Centro de Transportación del Municipio.

En cuanto a los servicios que ofrecería el laboratorio propuesto, determinó que ofrecería servicios en horario extendido hasta las 9:00 p.m. de lunes a viernes y los sábados de 7:00 a.m. a 1:00 p.m., y que ofrecería servicios a domicilio a personas envejecientes, incluyendo a pacientes fuera del radio de una milla de su ubicación. **Determinó**

**también que ninguno de estos servicios eran ofrecidos en la actualidad por los laboratorios existentes, y que esos servicios en horario extendido eran necesarios porque había varios grupos médicos operando con horario extendido en el radio de una milla**.

La Oficial Examinadora concluyó que "si nos limitáramos exclusivamente al parámetro de población residente en el radio de una milla indefectiblemente tendríamos que concluir que ni éste, ni los existentes cumplen con el mismo". Al no cumplir el criterio poblacional, la Oficial Examinadora evaluó la solicitud en cuestión a base del criterio del número de pruebas realizadas por los laboratorios existentes. Conforme a dicho criterio, no se autorizará un nuevo laboratorio hasta que los existentes sobrepasen 7,000 pruebas anuales en promedio cada uno. Al concluir que aun añadiendo el laboratorio propuesto a los laboratorios existentes en el área, procesaría cada uno más de 4,000 pruebas anuales en exceso de las 7,000 que exige el Reglamento, la Oficial Examinadora determinó que debía otorgarse el certificado de necesidad y conveniencia solicitado, aunque no se satisfaciese completamente el criterio poblacional. Concluyó expresamente que el laboratorio en cuestión ofrecería servicios necesarios que no eran provistos por los laboratorios existentes; que el nuevo laboratorio no afectaría indebidamente a éstos porque ya cada laboratorio existente procesaba 4,000 pruebas más

que el mínimo reglamentario; por lo que era "viable económicamente la facilidad propuesta".

C.   **La cuestión substantiva ante nos**

Como se señaló antes, la Secretaria de Salud acogió la recomendación referida de la Oficial Examinadora y otorgó el certificado solicitado. La decisión de la Secretaria, sin embargo, fue revocada por el Tribunal de Circuito de Apelaciones, que determinó que ésta había actuado "arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción". Ello, porque no se cumplió con el criterio poblacional de un laboratorio por cada 14,000 habitantes. Erró el foro apelativo al resolver de este modo.

En decisiones previas de este Tribunal, hemos caracterizado la naturaleza jurídica del certificado de necesidad y conveniencia. Hemos resuelto que se trata de un mecanismo de planificación, mediante el cual el Secretario de Salud formula e implanta a la vez la política pública sobre los servicios de salud. Ruiz Hernández v. Mahiques, 120 D.P.R. 80, 89 (1987). "El Secretario, al otorgar o denegar un certificado de necesidad y conveniencia, no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud". Id., a la pág. 88. "...el Secretario tiene facultad para reglamentar y adjudicar al mismo tiempo. La formulación de la política

pública no se limita únicamente al mecanismo de reglamentación, sino que se extiende al de adjudicación". Id., a la pág. 86. Hemos señalado, además, que la decisión de otorgar o denegar un certificado de necesidad y conveniencia surge de un proceso evaluativo institucional, que culmina con la decisión **personal** del Secretario. Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 D.P.R. 720, 732-733 (1989). Se trata de un proceso que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de varios criterios diversos. Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra; Ruiz Hernández v. Mahiques, supra, a la pág. 87.

De lo anterior es evidente que la decisión final del Secretario **apareja el uso de su discreción**. Tal decisión no puede tomarse sin antes sopesar numerosos elementos y pasar juicio sobre distintas consideraciones, para entonces determinar qué es lo que más conviene al interés general y al bien común. Ruiz Hernández v. Mahiques, supra. Es por ello que el Art. VI del Reglamento Núm. 56, transcrito antes, en términos claros dispone que cuando una solicitud para un certificado de necesidad y conveniencia **"no llene uno o más de los criterios aplicables, la solicitud podrá ser denegada"**. Surge de modo palmario que en estos casos el Secretario tiene **discreción** para denegar el certificado; o por implicación, para concederlo, si ello es necesario y conveniente. Tiene discreción para obviar un criterio reglamentario, cuando ello sea procedente.

Este reconocimiento reglamentario de la discreción referida del Secretario merece nuestra deferencia por dos razones fundamentales. Por un lado, reiteradamente hemos afirmado la norma doctrinal de que la interpretación que una agencia le dé a su ley orgánica amerita gran respeto y consideración judicial. Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669, 678 (1987); Tormos & DACO v. F.R. Technology, 116 D.P.R. 153, 160 (1985); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 96 (1974). Por otro lado, una interpretación contextual de la Ley Núm. 2 referida claramente revela, como intimamos en el párrafo anterior, que el legislador dejó en manos del Secretario la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios, que aparejan un ámbito de discreción.[1]

Es cierto que la Ley sobre Certificados de Necesidad y Conveniencia contiene disposiciones específicas y rigurosas

---

[1]Así pues, en la Exposición de Motivos de la Ley en cuestión se señala que el propósito de la legislación es que se ofrezcan en el país "únicamente aquellos servicios de salud... cuya necesidad y conveniencia pública haya sido previamente determinada **por el Secretario**". (Enfasis suplido). Los Artículos 1 y 2 de la ley referida facultan **al Secretario** para emitir y otorgar los certificados aludidos. El Artículo 4 lo autoriza a eximir del requisito de obtener dicho certificado a determinadas facilidades de salud; y el Artículo 17 le da la autoridad para cancelar dichos certificados en determinados casos. Estas y otras disposiciones de la Ley Núm. 2 en cuestión, vistas integralmente como debemos hacerlo, Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 749 (1992), reflejan la intención legislativa de delegar en manos del Secretario de Salud todas las decisiones sobre este asunto, sujeto este amplio poder a guías, criterios y normas fijadas en la legislación.

que el Secretario de Salud debe observar durante las varias etapas del proceso de conceder o denegar los certificados requeridos. Pero ello sólo significa que su discreción está debidamente limitada. Las disposiciones aludidas persiguen demarcar precisamente el alcance de su discreción. No pretenden ser una camisa de fuerza para restringir innecesariamente la propia facultad que le delega la Ley Núm. 2 para expedir o denegar los certificados referidos. Como tantas veces sucede en el Estado moderno, por la complejidad del mandato que se le otorga al Secretario, se le delegan amplios poderes, con normas para delimitar su ejercicio, pero otorgándole a la vez discreción en el desarrollo y ejecución de la política pública. M & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319 (1987); López v. Junta de Planificación, 80 D.P.R. 646 (1958).

En el caso de autos, la decisión de la Secretaria de Salud de otorgarle el certificado a la parte recurrida fue razonable. Se fundamentó en la evidencia sobre el número de pruebas realizada por los laboratorios existentes, las cuales excedían el promedio mínimo de 7,000, que es el criterio más preciso para determinar la necesidad del servicio. También se tomó en cuenta que el laboratorio propuesto prestaría servicios en horario nocturno y, además, ofrecería servicio a domicilio para los envejecientes, los cuales no eran provistos por los laboratorios existentes. Se trata, pues, de una decisión que se apoyó en prueba

sustancial, y que se emitió conforme a las normas aplicables.

III

Lo anterior no concluye la consideración de los recursos ante nos. En su escrito contestando nuestra orden de mostrar causa, la parte recurrida nos planteó una objeción de índole procesal a la decisión de la Secretaria de otorgar el certificado en cuestión. Se trata de un asunto que la recurrida había traído ante el foro apelativo y que éste resolvió en su contra.

Aduce el Laboratorio Clínico Borinquen, Inc., que la decisión de la Secretaria es nula, por haberse emitido transcurridos ya los términos estatutarios y reglamentarios que ésta tenía para formalizar tal decisión. Como se narró antes, las solicitudes para los certificados de necesidad y conveniencia que aquí nos conciernen se presentaron el 6 de julio y el 21 de agosto de 1995. La vista administrativa sobre dichas solicitudes se celebró el 13 y 16 de diciembre de 1996; pero la Secretaria no emitió su resolución otorgando un certificado hasta del 18 de marzo de 1998.

La consideración de la cuestión procesal aludida antes requiere que examinemos tanto la sección 3.13(g) como la sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, que son las disposiciones estatutarias en que se ampara la recurrida. La sección 3.13(g), 3 L.P.R.A. sec. 2163(g), dispone que "[t]odo caso sometido a un

procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo circunstancias excepcionales". Por otro lado, la sección 3.14, 3 L.P.R.A. sec. 2164, establece que "[u]na orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada". Una disposición similar a esta última se encuentra en el Reglamento Núm. 56 que hemos considerado antes, cuyo Artículo X(2) establece un término de noventa (90) días para que la Secretaria emita una decisión sobre el particular.

No cabe duda de que la Secretaria de Salud tiene la obligación de observar fielmente los términos referidos en el párrafo anterior. Estos términos tienen como fin primordial asegurar que los procesos administrativos se lleven a cabo de manera rápida y eficiente, y las agencias y sus directores no tienen discreción para incurrir en tardanzas o dilaciones injustificadas.

Sin embargo, aunque la resolución en controversia no fue emitida dentro de los términos referidos, el incumplimiento de la Secretaria de Salud con dichos términos no tiene el alcance que la parte recurrida pretende que le otorguemos. Ya en J. Exam. Tec. Méd. v. Elías, et al.,

opinión del Tribunal de 26 de noviembre de 1997, 144 D.P.R. ___, 97 JTS 141, resolvimos que los términos aludidos son de carácter directivo, y no jurisdiccionales. Señalamos allí que la obligación de las agencias de cumplir con dichos términos es de cumplimiento estricto. De igual manera, afirmamos que la ampliación de los términos sólo ocurre en las circunstancias dispuestas en la L.P.A.U., a saber, circunstancias excepcionales, consentimiento escrito de todas las partes, o causa justificada. También resolvimos entonces que los remedios judiciales que tiene disponibles la parte afectada cuando la agencia incumple con su obligación de decidir expeditamente, como sucedió en el caso de autos, es la presentación de un *mandamus* ante el foro judicial, o una moción de desestimación ante la agencia concernida.

En el caso de autos la supuesta tardanza o dilación de la Secretaria de Salud a la que objeta la recurrida, **tuvo justificación**. La Secretaria no pudo cumplir con lo que disponen la Sec. 3.13(g) y la 3.14 de la L.P.A.U., supra, de resolver el caso dentro de un término de seis meses a partir de su presentación, o dentro de noventa (90) días después de concluida la vista, debido a varias razones. En primer lugar, debe notarse que, **a solicitud precisamente de las partes**, la vista administrativa correspondiente se tuvo que suspender en varias ocasiones. A solicitud de las partes se suspendió la vista señalada para el 8 y 9 de febrero de 1996; la señalada para el 19 y 20 de marzo de 1996; la

señalada para el 16 y 17 de junio del 1996; la señalada para el 15 y 16 de agosto de 1996; y la señalada para el 16 y 17 de octubre de 1996. Lo anterior significa que debido a las suspensiones solicitadas por las partes, la vista se pospuso en varias ocasiones durante un período total de más de nueve meses. Es evidente, pues, que la solicitud de certificado que aquí nos concierne no podía resolverse dentro del término directivo de seis meses desde su radicación que dispone la sec. 3.13(g) aludida. Cuando al fin se pudo celebrar la vista administrativa el 13 y 16 de diciembre de 1996 ya había transcurrido más de un año desde la presentación de las solicitudes en cuestión.

Por otro lado, además de las numerosas suspensiones de las vistas administrativas solicitadas por las partes, también es menester tomar en cuenta que la Secretaria de Salud tenía ante sí **dos solicitudes distintas para operar nuevos laboratorios en la misma área de servicio**. La oficial examinadora que tenía a cargo ambas propuestas tenía que analizar numerosos y complejos hechos, mayormente de naturaleza económica, para determinar la viabilidad de cada una de las dos solicitudes referidas. El hecho de tener que examinar de manera conjunta dos propuestas distintas para establecer laboratorios clínicos en una misma área de servicio, unida a la naturaleza evidentemente pericial de las cuestiones a ser consideradas, demuestra la complejidad particular de la encomienda que tenía la oficial examinadora a cargo de estos casos, que requería dedicarle a su

consideración mucho más tiempo que lo que toma ordinariamente cuando se trata de una sola solicitud.

Finalmente, es menester tomar en cuenta también que las solicitudes para los certificados en cuestión no estaban completas cuando se presentaron ante la Secretaria de Salud. El expediente de autos refleja que hubo problemas porque los proponentes no tenían inicialmente los permisos de la Administración de Reglamentos y Permisos que eran necesarios para operar las facilidades. Por ello, el 26 de marzo de 1996 se les concedió a los proponentes un término de noventa (90) días para que presentasen al Departamento de Salud los permisos correspondientes, para entonces proceder a celebrar la vista administrativa de rigor.

A la luz de todo lo anterior, es evidente que existieron circunstancias excepcionales para no resolver el asunto ante nos dentro del término directivo de seis meses que dispone la L.P.A.U. No tiene, pues, razón la recurrida en su planteamiento de que la decisión fue contraria a lo dispuesto en la sec. 3.13(g) de dicha Ley.

Por otro lado, tampoco tiene razón la recurrida al alegar que la decisión de la Secretaria de Salud tampoco cumplió con la sec. 3.14 de la L.P.A.U. que requiere que la Secretaria emita una orden final dentro de noventa (90) días después de concluida la vista, o noventa (90) días después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho dispuestos según lo autoriza la sec. 3.13(f) de dicha ley. En este caso, las circunstancias

excepcionales que expresamos previamente, en específico la que se refiere a la complejidad inusitada de este caso en particular, también constituyen causa justificada para exceder el término de noventa (90) días referido. Por tanto no hubo violación alguna a la sec. 3.14 de la L.P.A.U., como erróneamente alegó la recurrida.

En resumen, pues, es inmeritorio el planteamiento de la recurrida sobre la supuesta tardanza de la Secretaria de Salud en resolver el caso y emitir la orden que aquí nos concierne.


IV

Por los fundamentos expuestos, se expedirán los recursos ante nos, y se dictará sentencia para dejar sin efecto la del foro apelativo del 13 de julio de 1998.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Laboratorio Clínico Instituto
Central Medicina Avanzada
    Demandante-Recurrente

       vs.

Laboratorio Clínico Borinquen,       CC-1998-695       Certiorari
Inc.                        Ref. CC-1998-697
    Recurrente-Recurrido

       vs.

Departamento de Salud
    Recurrido-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 9 de septiembre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se expiden los recursos ante nos, y se dicta sentencia dejando sin efecto la del foro apelativo del 13 de julio de 1998.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo