# 2006 DTA 6

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL ESPECIAL**

FARMACIAS WALGREENS
Recurrida

v.

FARMACIAS GLADYS, FARMACIAS RECETAS Y MÁS Y FARMACIAS LESMARIE
Recurrentes

------------------------------

FARMACIAS EL AMAL, INC.
Recurrentes

v.

FARMACIAS WALGREENS, INC.
Recurridos

Núms. Cons. KLRA-04-00710 / KLRA-04-00737

San Juan, Puerto Rico, a 20 de octubre de 2005

Panel especial integrado por su Presidente, el Juez Martínez Torres, y los Jueces Coll Martí y Fraticelli Torres

Coll Martí, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 7 de septiembre de 2004, compareció ante este foro apelativo Farmacias Gladys, Farmacias Recetas y Más y Farmacias Lesmarie (en adelante las recurrentes Farmacias Gladys, *et al.*) en un escrito titulado Apelación y solicitaron la revisión de la Resolución del Secretario de Salud (en adelante, el Secretario) emitida el 10 de agosto de 2004 en la que se otorgó a las Farmacias Walgreens (la recurrida) el Certificado de Necesidad y Conveniencia (CNC) número 04-248 para operar un recetario en la farmacia de esa cadena ubicada en la Avenida Sabana Seca y Los Dominicos en Levittown, Toa Baja. El 13 de septiembre de 2004, Farmacias El Amal (en adelante, la recurrente El Amal) presentó un escrito titulado Revisión de Decisión Administrativa, en el que también solicitó la revisión de la Resolución emitida por el Secretario el 10 de agosto de 2004.

Mediante Resolución de 9 de diciembre de 2004, notificada a las partes el 23 de diciembre de 2004, declaramos Con Lugar una solicitud presentada por la recurrida y consolidamos ambos recursos de revisión bajo el número 2004-00710, por tratarse de casos con hechos y controversias de derecho idénticas. Además, en dicha Resolución aceptamos como transcripción de la prueba oral en el caso la transcripción que fue estipulada por las partes en la vista administrativa y presentada en el recurso KLRA-04-00737.

Las recurrentes plantearon cinco errores en total, a los que les damos numeración consecutiva, como sigue:

*"Por las recurrentes Farmacias Gladys, et al:*

*1. El Departamento de Salud erró al aceptar una encuesta que no establece el universo a investigar y aceptar la misma en sustitución de un estudio de viabilidad económica.*

*2. El Departamento de Salud erró al no aplicarle al caso de autos el Artículo VI, el inciso 1 del Reglamento 56 que establece que el Municipio de Toa Baja está bajo categoría 1 de 9,000 habitantes por farmacia.*

*3. El Departamento de Salud erró al no aplicar al caso de autos el Artículo VI, inciso 3, del Reglamento 56 a los efectos de que no se podía autorizar el establecimiento de nuevas farmacias, hasta tanto las farmacias entrantes en una milla a la redonda sobrepasen un promedio de dos mil recetas por farmacias por mes, excluyendo las farmacias en instituciones gubernamentales. Se podría tomar en cuenta su horario de servicios*

*y los planes médicos a que se acogen las farmacias establecidas.*

*Por la recurrente El Amal:*

*4. Erró el Hon. Secretario del Departamento de Salud al conceder el CNC solicitado, toda vez que relevó a la proponente de cumplir con los únicos dos criterios específicos del Reglamento 56.*

*5. Erró el Departamento de Salud al conceder el CNC solicitado, pues al relevar a Walgreens de cumplir con los criterios específicos del Reglamento 56 violó el derecho al debido proceso de ley de las partes opositoras."*

Como cuestión de umbral, debemos disponer de dos mociones presentadas, la *"Moción Urgente en Solicitud de Orden"* donde la recurrente El Amal nos solicitó que ordenáramos a la recurrida abstenerse de operar el recetario, debido a que el CNC otorgádole por el Secretario de Salud alegadamente no es efectivo aún, ya que se ha solicitado la revisión judicial del mismo y la *"Moción Informativa y Solicitud de Paralización"* donde la recurrida propuso que paralicemos los procedimientos en este foro, pendiente el resultado del caso *Walgreens Co., Walgreen of San Patricio and Walgreen of Puerto Rico v. John V. Rullán*, No. 03-2542, decidido el 22 de abril de 2005 por la Corte de Apelaciones de los Estados Unidos, Primer Circuito, y cuya apelación presentada por el Estado Libre Asociado de Puerto Rico se encuentra pendiente de resolución.

La solicitud para que detengamos la operación del recetario, pendiente nuestra resolución de este recurso, es claramente inmeritoria. No procedía la paralización. *"La presentación de un recurso de revisión no tendrá el efecto de paralizar la implantación de una regla o Reglamento, orden, resolución o determinación de una agencia o funcionario(a) o la adjudicación de una subasta impugnada."* Regla 61(A)(1) del Reglamento del Tribunal de Apelaciones.

En cuanto a la solicitud de la recurrida para que paralicemos los procedimientos en este foro mientras se dilucida el caso en el foro federal, es claro que, mientras no se declare inconstitucional la Ley 2, *supra*, que establece que toda persona interesada en adquirir, construir o desarrollar una facilidad de salud tiene que obtener un Certificado de Necesidad y Conveniencia otorgado por el Secretario de Salud, este foro, debido a que es el llamado a revisar las decisiones administrativas finales de las agencias y organismos administrativos, tiene autoridad para revisar el otorgamiento de cualquier CNC. Ley 170 de 12 de agosto de 1998, Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. 2101 y ss. Por otro lado, nuestro sistema procesal persigue, como cuestión de política pública, la pronta solución de los casos y no encontramos fundamento en ley ni circunstancia especial para dilatar la solución del presente recurso. *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664, 674 (1989).

Hemos considerado el derecho aplicable, así como la totalidad del expediente. Resolvemos *confirmar* la Resolución de la agencia, por los fundamentos aquí expuestos.

# I

El 2 de abril de 2003, Farmacias Walgreens presentó ante la Secretaria Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS), una solicitud de Certificado de Necesidad y Conveniencia (CNC) para el establecimiento de una farmacia en la Intersección de las Avenidas Sabana Seca y Los Dominicos en Levittown, Toa Baja.

Se celebró Vista en su fondo los días 13 y 14 de enero de 2004. La solicitud de CNC se llevó a cabo a tenor con las disposiciones del Reglamento 56. El 7 de julio de 2004, la oficial examinadora emitió el Informe del Oficial Examinador que contiene determinaciones de hechos, conclusiones de derecho y su recomendación al Secretario de Salud. De acuerdo a las determinaciones de hechos contenidas en dicho Informe, Farmacias

Walgreens acompañó su solicitud con todos los documentos requeridos.

Las partes estipularon, entre otros, los siguientes hechos:

*"1. En el área de servicio de la Farmacia Walgreens propuesta operan nueve (9) farmacias, a saber: Farmacia Patria, Farmacia Recetas y Más, Farmacia El Amal 46, Farmacia El Amal 37, Farmacia Lesmarie, Farmacia Gladys, Farmacia Medina, Farmacia Boulevard y Farmacia Carisma.*

*2.   ....*

*3.   El horario y ubicación de las farmacias dentro del área de servicio de la propuesta Farmacia Walgreens son los siguientes:*

*Patria - Carr. 866 Km. 3.5, Bo. Sabana Seca, Toa Baja - Lunes a sábado: 9:00 a.m. a 8:00 p.m. (cerrada los domingos)*

*Recetas y Más - Carr. 866 Km. 3.4, Bo. Sabana Seca, Toa Baja - Lunes a viernes: 8:00 a.m. a 9:00 p.m.; sábado 9:00 a.m. a 9:00 p.m. (cerrada los domingos)*

*El Amal 46 - Ave. Comerío, Plaza Davison, Levittown - Lunes a domingo: 24 horas*

*El Amal 37\* - Levit Ville Mini, Market Avenida, Los Dominicos, Levittown - Lunes a domingo: 8:00 a.m. a 10:00 p.m.*

*Lesmarie - Gregorio Ledesma, HP-21 Levittown - Lunes a jueves: 9:00 a.m. a 10:00 p.m.; viernes 9:00 a.m. a 9:30 p.m.; sábado 9:00 a.m. a 8:00 p.m. (cerrada los domingos)*

*Gladys 1 - Ramón Ríos Román, 112-B Bo. Sabana, Seca, Toa Baja - Lunes a sábado: 8:00 a.m. a 9:00 p.m.; domingos 9:00 a.m. a 8:00 p.m.*

*Medina  - Ave. Boulevard J24, Esq. Luis Lealtad, S-1 Levittown - Lunes a sábado: 9.00 a.m. a 11:00 p.m. (cerrada los domingos)*

*Boulevard - Ave. Boulevard J24, Esq. Mirilla, Levittown - Lunes a viernes: 8:00 a.m, a 5:00 p.m, (cerrada sábados y domingos)*

*Carisma - Ave. Boulevard, Esq. Gautier, Benítez EB-1, Levittown - Lunes a domingo: 9:00 a.m. a 10:00 p.m.*

*4.   La certificación de la milla radial, que fue preparada por el agrimensor Pedro Dávila Colón.*

*5.   ....*

*6.   ....*

*7.   La Farmacia Walgreens propuesta abriría veinticuatro (24) horas, siete (7) días a la semana, lo que equivale a 164 horas semanales.*

*8.   ....*

9. ....

10. ....

11. ....

12. La Farmacia Walgreens propuesta, al igual que lo hacen otras Farmacias Walgreens que operan en Puerto Rico, ofrecería clínicas de salud gratuitas sobre distintas enfermedades y condiciones de salud, tales como la diabetes, hipertensión, colesterol, reflujo y presión arterial.

13. La Farmacia Walgreens propuesta contaría con un sistema telefónico automatizado llamado "Touch Tone Refills" que permitiría a un cliente ordenar a través del teléfono la repetición de cualquier receta despachada en una de las Farmacias Walgreens, según lo haya autorizado el médico en la receta, lo que prácticamente elimina la espera de medicamentos.

14. Ofrecería, además, el servicio de Auto-repetición, mediante el cual se despacha cualquier receta de medicamento de mantenimiento previamente autorizado por un médico cinco (5) días antes de que su medicamento se termine.

15. La Farmacia Walgreens propuesta aceptaría la gran mayoría de los planes de salud local así como gran número de los planes nacionales.

16. ....

17. ....

18. La Farmacia Walgreens propuesta contaría con una ventanilla de auto-farmacia.

19. ....

20. ....

21. ....

22. ....

23. La Farmacia Walgreens contaría con un sistema de computadora e "intercom", el cual conectaría a todas las Farmacias Walgreens en Puerto Rico y en Estados Unidos y permitiría el despacho inmediato de una receta entregada en cualquier Farmacia Walgreens en otra Farmacia Walgreens, alertaría sobre medicamentos contraindicados y permitiría la obtención de una lista de todos los medicamentos despachados a una persona durante el período de tiempo específico. Permitiría, además, la repetición de un medicamento cuya repetición se hubiese autorizado, independientemente de la Farmacia Walgreens en que se hubiese despachado originalmente la receta.

24. ....

25. La Farmacia El Amal honra sobre 30 planes de salud y tendría un inventario en el recetario de sobre $300,000.

26. ....

*27. ....*

*28. ....*

*29. El Amal cuenta con un sistema de computadora que mantiene un inventario de medicamentos, un perfil del paciente, y alerta en caso de interacciones inadecuadas de droga.*

*30. ....*

*31. ....*

*32. ....*

*33. ....*

*34. Los servicios y beneficios que ofrecen las farmacias opositoras son básicamente los mismos que ofrece Walgreens.*

---

*\*Pendiente una Solicitud de Relocalización A-78-01-284."*

Por otro lado, el Sr. Vicente Feliciano, quien testificó para la recurrida Walgreens, fue cualificado por la Oficial Examinadora como perito economista en el área de estudios de mercadeo.

La Oficial Examinadora del Departamento evaluó el cumplimiento de la recurrida Walgreens con cada uno de los criterios generales a ser considerados para la concesión de un CNC, según dispuesto en la Ley 2 de 7 de noviembre de 1975, 24 LPRA § 334 *et seq.*, Ley de Certificado de Necesidad y Conveniencia.

Como resultado de dicha evaluación, el 7 de julio de 2004, la Oficial Examinadora presentó su Informe del Oficial Examinador el cual el Secretario adoptó como suyo y, a base del mismo, emitió una Resolución el 10 de agosto de 2004 en la que otorgó el CNC a la recurrida.

En su informe, la Oficial Examinadora concluyó, en primer lugar, que por haberse llevado a cabo la vista luego de que adviniera final y firme la decisión del Tribunal Supremo en *Asociación de Farmacias v. Departamento de Salud*, 157 D.P.R.___; **2002 J.T.S. 75**, que invalidó el Reglamento 89 hasta entonces vigente, se evaluaría la solicitud al amparo de las disposiciones del Reglamento 56, Reglamento para Establecer todo lo Relacionado con las Solicitudes de Certificado de Necesidad y Conveniencia del 15 de agosto de 1986.

En su informe, la Oficial Examinadora analizó y discutió la metodología utilizada de llevar a cabo una encuesta como parte del estudio de viabilidad económica que se condujo; analizó y discutió el criterio poblacional de una farmacia por cada 9,000 habitantes que establece el Reglamento 56, *supra*; y analizó así mismo el criterio, también establecido en dicho Reglamento, de que no se podrá autorizar el establecimiento de nuevas farmacias en determinada área hasta tanto las farmacias establecidas en un área de una milla a la redonda sobrepasen un promedio de dos mil (2,000) recetas, por farmacia, por mes, excluyendo las farmacias existentes en instituciones gubernamentales.

En cuanto a la metodología de encuesta llevada a cabo por el perito de la recurrida, señor Feliciano, la Oficial Examinadora determinó que se llevó a cabo dicha encuesta entre las personas que visitaron la farmacia Walgreens aludida durante seis días, del jueves 29 de enero al miércoles 4 de febrero, porque la tienda no abre los domingos, que el 70% de los encuestados vive en el área de servicio, ya que se encuestó a 6,196 personas, de las cuales 3,938 eran residentes y 2,258 constituian población flotante. De estas últimas, unas 1,039, a pesar

de constituir población flotante, pertenecen a las áreas de desarrollo urbano adyacentes a la milla radial. La Oficial Examinadora concluyó que la encuesta utilizada fue apropiada como herramienta de medición para proyectar la población en general y para establecer cuál sería la clientela del recetario propuesto, determinar la procedencia de la clientela y qué porcentaje de esa clientela constituía población flotante, esto es, la clientela que proviene de fuera de la milla radial. Se entrevistó aproximadamente a 1,000 personas por día dentro de la tienda y, aunque parte de los encuestados no realizaron transacción alguna en las facilidades, se determinó que la muestra utilizada fue representativa y que la misma permite un análisis estadístico apropiado porque, aun desconociendo el universo, éste puede obtenerse por inferencia estadística.

De la misma manera, la Examinadora concluyó que para julio de 2000, la población residente del área de servicio se calculó en 40,042 habitantes, tomando en cuenta el crecimiento poblacional de Toa Baja y la relación entre éste y el área de servicio; que la densidad poblacional en el área de servicio era de 12,643 habitantes por milla y que, al compararse con la densidad poblacional de 1,080 habitantes por milla en todo Puerto Rico, la primera resulta ser 11 veces superior a la densidad poblacional de Puerto Rico.

En cuanto al señalamiento de que el Municipio de Toa Baja pertenece a la Categoría I, en la cual la relación establecida es de 9,000 habitantes por farmacia, [1] quedó establecido que en el área operan nueve farmacias y que de aplicarse este criterio, existirían cinco farmacias en exceso en el área de servicio, ya que la ecuación establece que debería haber 4.45 farmacias en el área al dividir la población existente entre 9,000 habitantes. De acuerdo a este criterio, el área estaría saturada. La Examinadora concluyó, sin embargo, que si bien es cierto que el Municipio de Toa Baja está incluido dentro de la Categoría I y le corresponde una proporción de 9,000 habitantes por farmacia, también se debe tomar en consideración que dicha clasificación se hizo a la luz de las circunstancias demográficas y de servicios de salud de hace alrededor de 20 años, cuando el mayor proveedor de servicios de salud era el Gobierno, circunstancia que ha cambiado drásticamente desde la implantación de la Reforma de Salud y la privatización de las facilidades de salud del Gobierno. Concluyó la Examinadora que se acerca más a la realidad demográfica actual del Municipio de Toa Baja el hacer su determinación obviando dicha clasificación de "*Categoría I*" que resulta ser un "*corsé*".

En cuanto al requisito de que no se podrá autorizar el establecimiento de nuevas farmacias en un área determinada hasta tanto las farmacias existentes en una milla a la redonda sobrepasen las 2,000 recetas por farmacia, por mes, la Examinadora lo descartó de igual manera. Concluyó que no existe historial alguno que demuestre por qué se determinó utilizar este criterio de 2,000 recetas frente a cualquier otro número, que las razones por las que una farmacia puede estar despachando menos de 2,000 recetas por mes pueden ser múltiples, entre ellas, razones atribuibles al manejo de la farmacia en particular y que la prueba desfilada demostró que existe una demanda que supera por mucho la oferta de servicio de recetario en el área de servicio.

## II

La concesión de un CNC se rige por la Ley 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sec. 334 *et seq.*, conocida como la Ley de Certificados de Necesidad y Conveniencia. La Ley establece que toda persona interesada en adquirir, construir o desarrollar una facilidad de salud tiene que obtener un Certificado de Necesidad y Conveniencia. Art. 2 de la Ley de CNC, 24 L.P.R.A. sec. 334a. El propósito de esta Ley es asegurar la planificación ordenada de las facilidades y servicios de salud. Dicha Ley establece la facultad del Secretario de Salud para otorgar Certificados de Necesidad y Conveniencia para el establecimiento de nuevas facilidades de salud, cuando ello sea necesario y conveniente para la población que dichas facilidades van a servir, siempre que no se afecten indebidamente los servicios existentes. Se contribuye así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, 149 D.P.R. 121, 127 (1999). La concesión o denegatoria de un CNC implica un juicio discrecional de política pública. Se trata de un proceso que requiere la evaluación de muchas circunstancias y factores complejos y la ponderación de varios criterios diversos. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra*, a la pág. 132.

De hecho, el Tribunal Supremo de Puerto Rico ha expresado que, al otorgar o denegar un Certificado de Necesidad y Conveniencia, el Secretario de Salud no solamente concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las diversas áreas regionales de salud. *Ruiz Hernández v. Mahiquez,* 120 D.P.R. 80, 88 (1987). Por tanto, *"el legislador dejó en manos del Secretario la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios, que aparejan un ámbito de discreción." Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra,* a la pág. 133.

En el caso ante nos, el Secretario del Departamento de Salud, ejerciendo su discreción y fundamentado en las determinaciones de la Oficial Examinadora, otorgó el CNC solicitado. Sin embargo, como parte de la función revisora, el Tribunal de Apelaciones ha de asegurar que las decisiones adjudicativas del Departamento de Salud, que han sido impugnadas y tiene ante su consideración, sean detalladas, razonadas y bien fundamentadas. Además, este foro examinará si dichas decisiones son consistentes entre sí y con los criterios generales que establece la Ley 2, *supra. Asoc. Fcias. Com. v. Depto. de Salud II,* 157 D.P.R. ___ (2002), **2002 J.T.S. 75,** a la pág. 1191.

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2275, dispone al respecto que *"[l]as determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* Véase *Costa, Piovanetti v. Caguas Expressway,* 149 D.P.R. 881, 889 (1999).

La revisión judicial de las actuaciones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue aprobado, (2) si las determinaciones de hechos efectuadas por la agencia están sostenidas por evidencia sustancial que obre en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho fueron correctas. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 532 (1993). A estos fines, evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. La parte afectada debe demostrar que en el récord administrativo existe otra prueba que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto que no pueda concluirse que la determinación de la agencia fue razonable. *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64 (1998). En *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387, 397-398 (1999), el Tribunal Supremo reiteró que *"para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe otra prueba en el expediente que razonablemente reduzca o menoscabe el peso de tal evidencia. Si en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben sostenerse por el tribunal revisor." Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v Depto. de Salud,* 147 D.P.R. 901 (1999).

### III

Luego de un examen riguroso del expediente, determinamos que el Secretario otorgó el CNC solicitado por Walgreens a base de la evidencia sustancial que obra en el expediente administrativo y que no se cometió ninguno de los errores señalados. Fue a base de esa misma evidencia que la Oficial Examinadora emitió su informe y recomendó que se otorgara el referido certificado.

El 5 de febrero de 2002, el Tribunal Supremo de Puerto Rico resolvió, en *Asociación de Farmacias de la Comunidad v. Departamento de Salud,* 156 D.P.R. ___, **2002 J.T.S. 18,** derogar el *"Reglamento 89 para Regular el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia",* arguyendo que los criterios contenidos en dicho Reglamento eran generales, ambiguos y no delimitaban apropiadamente la discreción del Secretario de Salud. Quedó en vigor, entonces, el anterior Reglamento 56, *supra. "Por ello, el Departamento de Salud deberá evaluar bajo los parámetros establecidos en el Reglamento 56 todas las solicitudes de Certificados de Necesidad y Conveniencia que sean sometidas*

*desde que esta decisión advenga final y firme." Asoc. Fcias. Com. v. Depto. de Salud, supra.*

La recurrida presentó su solicitud para el CNC el 2 de abril de 2003 durante la vigencia del Reglamento 56, que posteriormente fue derogado por el Reglamento 112, aprobado por el Secretario de Salud el 20 de febrero de 2004.

El Reglamento 56 tiene su base en la Ley 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. 334 y ss., y ambos son producto del interés del Estado por lograr una planificación ordenada de las facilidades y servicios de salud, controlando los costos de servicios y velando porque éstos se ofrezcan en los núcleos poblacionales donde son realmente necesarios. En otras palabras, el interés del Estado es que los servicios a ofrecerse estén enmarcados en la necesidad y en la conveniencia de la población que hará uso de dichos servicios.

El Certificado de Necesidad y Conveniencia no es otra cosa que un mecanismo de planificación que utiliza el Secretario, quien, al otorgar o denegar un CNC, planifica el desarrollo de los servicios de salud en las distintas regiones de salud del país.

El proceso evaluativo institucional que lleva a cabo el Secretario requiere la evaluación de circunstancias y factores complejos y la ponderación de diferentes criterios. Su decisión final apareja el uso de discreción, aun cuando dicha discreción está debidamente limitada por reglamento.

La jurisprudencia ha establecido que el Secretario tiene la discreción para obviar uno o varios criterios reglamentarios al otorgar un Certificado de Necesidad y Conveniencia. En *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, 149 D.P.R. 121 (1999), se analizó precisamente este punto y se dijo:

*"En decisiones previas de este Tribunal, hemos caracterizado la naturaleza jurídica del certificado de necesidad y conveniencia. Hemos resuelto que se trata de un mecanismo de planificación, mediante el cual el Secretario de Salud formula e implanta a la vez la política pública sobre los servicios de salud. Ruiz Hernández v. Mahiques, 120 D.P.R. 80, 88 (1987). El `Secretario, al otorgar o denegar un certificado de necesidad y conveniencia, no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud.´ Íd., pág. 88. `... el Secretario tiene facultad para reglamentar y adjudicar al mismo tiempo. La formulación de política pública no se limita únicamente al mecanismo de reglamentación, sino que se extiende al de adjudicación´. Íd., pág. 86. Hemos señalado, además, que la decisión de otorgar o denegar un certificado de necesidad y conveniencia surge de un proceso evaluativo institucional, que culmina con la decisión personal del Secretario. Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 D.P.R. 720, 732-733 (1989). Se trata de un proceso que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de varios criterios diversos. Hosp. San Pablo v. Hosp. Hnos. Meléndez, supra; Ruiz Hernández v. Mahiques, supra, pág. 87.*

*De lo anterior, es evidente que la decisión final del Secretario apareja el uso de su discreción. Tal decisión no puede tomarse sin antes sopesar numerosos elementos y pasar juicio sobre distintas consideraciones, para entonces determinar qué es lo que más conviene al interés general y al bien común. Ruiz Hernández v. Mahiques, supra. Es por ello que el Art. VI del Reglamento Núm. 56, transcrito antes, en términos claros dispone que cuando una solicitud para un certificado de necesidad y conveniencia `no llene uno o más de los criterios aplicables, la solicitud podría ser denegada´. (Énfasis suplido.) Surge de modo palmario que en estos casos, el Secretario tiene discreción para denegar el certificado; o por implicación, para concederlo, si ello es necesario y conveniente. Tiene discreción para obviar un criterio reglamentario, cuando ello sea procedente.*

*Este reconocimiento reglamentario de la discreción referida del Secretario merece nuestra deferencia por dos razones fundamentales. Por un lado, reiteradamente hemos afirmado la norma doctrinal de que la*

*interpretación que una agencia le de a su ley orgánica amerita gran respeto y consideración judicial. Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669, 678 (1987); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153, 160 (1985); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 96 (1974). Por otro lado, una interpretación contextual de la Ley Núm. 2 referida claramente revela, como intimamos en el párrafo anterior, que el legislador dejó en manos del Secretario la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios, que aparejan un ámbito de discreción.*

*Es cierto que la Ley sobre Certificados de Necesidad y Conveniencia contiene disposiciones específicas y rigurosas que el Secretario de Salud debe observar durante las varias etapas del proceso de conceder o denegar los certificados requeridos. Pero ello sólo significa que su discreción está debidamente limitada. Las disposiciones aludidas persiguen demarcar precisamente el alcance de su discreción. No pretenden ser una camisa de fuerza para restringir innecesariamente la propia facultad que le delega la Ley Núm. 2, supra, para expedir o denegar los certificados referidos. Como tantas veces sucede en el Estado moderno, por la complejidad del mandato que se le otorga al Secretario, se le delegan amplios poderes, con normas para delimitar su ejercicio, pero otorgándole a la vez discreción en el desarrollo y la ejecución de la política pública. M. & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319 (1987); López v. Junta Planificación, 80 D.P. R. 646 (1958)."*

En el caso que nos ocupa, determinamos que la decisión del Secretario de otorgarle el CNC a la recurrida fue una razonable y fundamentada en la evidencia. Para dicha determinación se tomó en cuenta que la demanda sobrepasa la oferta de las nueve farmacias en operación; que Walgreens traería servicios al área que no estaban disponibles, tales como auto-farmacia y horario extendido, programas de repetición de recetas y otros; que la recurrida demostró, a satisfacción de la Oficial Examinadora, que su propuesta es viable y que captaría sólo un dieciséis (16) por ciento de esa demanda; que existe una población en rápido crecimiento en el Municipio de Toa Baja, donde la densidad poblacional es once (11) veces mayor que la de Puerto Rico; y que tiene, además, una población flotante considerable que debe tomarse en cuenta al evaluar las necesidades de servicio del área.

En cuanto al primer error señalado de que no debió el Secretario aceptar una encuesta en sustitución de un estudio de viabilidad económica, ya en ocasiones anteriores los expertos del Departamento de Salud se han expresado en cuanto a la utilización de la encuesta en el ámbito administrativo. La metodología usada para la encuesta en este caso, al entrevistar a personas dentro de la tienda de Walgreens y levantar allí una muestra no probabilística, hace de la encuesta una sólida y confiable. Si lo que se quiere determinar es la cantidad de personas que visitará la farmacia, es suficiente que la metodología utilizada para determinarla guarde una relación racional con el objetivo. El Departamento de Salud, en forma consecuente, ha concedido valor probatorio a las encuestas como mecanismo de evaluación de solicitudes de CNC. El total de 6,196 entrevistas realizadas durante una semana entre la clientela que visitó Walgreens se aproxima a un censo de la clientela. Se estableció que el número de personas entrevistadas fue de un 80% del número de transacciones efectuadas en la tienda durante ese período. Más importante aún resulta señalar que la encuesta se utilizó y presentó como parte del estudio de viabilidad llevado a cabo por el perito señor Freyre, y no en sustitución del mismo. El perito testificó y las partes tuvieron oportunidad de contrainterrogarlo sobre su análisis de viabilidad económica. No se cometió el primer error señalado.

En cuanto al segundo y cuarto errores señalados de que el Municipio de Toa Baja cae dentro de la Categoría I y por ello le aplicaba el criterio de una farmacia por cada 9,000 habitantes dentro del radio de una milla, la Oficial Examinadora concluyó juiciosa y correctamente que, debido a los grandes cambios demográficos ocurridos en el área desde que se hizo dicha clasificación hace aproximadamente 20 años, procedería a obviar ese criterio reglamentario que consideró obsoleto y que, en palabras de la Oficial Examinadora, constituia *"un corsé"*. Al así hacerlo, actuó dentro del marco discrecional que le concede la Ley 2, *supra*. No se cometió, por lo tanto, el segundo y cuarto error.

En cuanto al tercer error señalado de que no se tomó en cuenta el criterio que establece que hasta que las farmacias existentes en el área no sobrepasen las 2,000 recetas por farmacia, por mes, no se autorizará el establecimiento de nuevas farmacias, concluyó la Oficial Examinadora que dicho criterio es de origen desconocido, que el número de recetas establecido pudo haber sido cualquiera distinto y no existe evidencia de cómo y porqué se determinó utilizar esa cantidad; en otras palabras, que el requisito es totalmente arbitrario y sin fundamento reconocible alguno. Además, es conveniente mencionar que lo atinado de la proposición esbozada por la Oficial Examinadora, al obviar los criterios antes expuestos, quedó confirmado cuando, para atemperar la reglamentación a los cambios demográficos, las necesidades poblacionales y los adelantos tecnológicos ocurridos en los servicios de salud en Puerto Rico, el Secretario promulgó el 20 de febrero de 2004 un nuevo reglamento, el Reglamento 112 para Regir el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia. Esta reciente reglamentación reconoció que existían criterios obsoletos en la anterior, eliminó por completo el requisito de 2,000 recetas por farmacia, por mes, dentro del área de servicio y modificó el criterio de cantidad de habitantes por farmacia. **[2]** Concluimos que tampoco se cometió el tercer error señalado.

El quinto error señalado por la recurrente aduce que, al relevar a Walgreens de cumplir con los criterios específicos del Reglamento 56, se violó el derecho al debido proceso de ley a las partes opositoras. No tiene fundamento en ley dicho señalamiento. La recurrente El Amal no explica en lo absoluto en qué consiste la violación del derecho a un debido proceso de ley. Se observó en el caso el procedimiento establecido en la Ley y su Reglamento, se celebró vista durante tres días donde las partes participaron ampliamente y presentaron su prueba testifical y pericial, la decisión administrativa estuvo bien fundamentada, cónsona con los precedentes administrativos y judiciales y con la formulación de determinaciones de hechos y conclusiones de derecho. Las partes tuvieron oportunidad de descubrir prueba, presentar y contrainterrogar testigos, estuvieron representadas por abogado y se llevó un récord de los procedimientos. Tanto el proceso administrativo así como la Resolución resultante, cumplen cabalmente con el debido proceso a que tienen derecho las partes en un proceso adjudicativo de naturaleza administrativa. La agencia actuó con jurisdicción y le brindó a las recurrentes todas las garantías procesales dispuestas por la Ley 170 de 12 de agosto de 1988, según enmendada, Ley de Procedimiento Administrativo Uniformne, 3 L.P.R.A. § 2151. Las recurrentes no han reclamado que se les haya violado algún derecho o interés propietario o libertario que les provea la Constitución del Estado Libre Asociado, aparte de declarar que se "*violó el derecho al debido proceso de ley*". No les asiste la razón, por lo que el quinto error señalado tampoco se cometió.

## IV

Por las razones expuestas, confirmamos la decisión del Secretario de Salud que otorgó un CNC a la recurrida Walgreens para operar un recetario en su farmacia ubicada en la Ave. Sabana Seca y Los Dominicos en Levittown, Toa Baja.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones