# 2009 DTA 128

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

FÉLIX CARABALLO ORTIZ
Recurrente

v.

DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS
Recurridos

Núm. KLRA-2009-00257

San Juan, Puerto Rico, a 15 de septiembre de 2009

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Cordero Vázquez y Cortés Trigo

Cordero Vázquez, Juez Ponente

Félix Caraballo Ortiz (el recurrente) acude ante este Tribunal para que revisemos la determinación emitida el 28 de enero de 2009 por la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). Por medio de esta Resolución, la CASARH confirmó la determinación del Departamento de Transportación y Obras Públicas (DTOP) para destituir al peticionario del puesto que ocupaba en la Oficina Regional de Humacao.

Por los fundamentos que expresamos a continuación, se confirma la decisión recurrida.

## I

El 23 de agosto de 2004, el DTOP notificó personalmente al recurrente la intención de destituirlo de su puesto como Ingeniero IV en la Oficina Regional de Humacao por haber incurrido en varias violaciones al Reglamento Núm. RI-OP-2002-01 de 1 de abril de 2002, Reglamento de Conducta y Medidas Disciplinarias del DTOP (Reglamento de Conducta). El 25 de agosto de 2004, por medio de su representación legal, el recurrente solicitó al DTOP que pautara una vista administrativa informal para impugnar la determinación de la agencia de destituirlo. Alegó que la destitución era arbitraria porque él no había violado disposición legal alguna. Además, alegó que la determinación del DTOP responde a una persecución política en su contra.

El 27 de septiembre de 2004, el DTOP avisó al recurrente que la vista administrativa informal fue pautada para el 22 de octubre de 2004. En esta comunicación se le informó al recurrente que durante la vista tendría la oportunidad de presentar su versión sobre los hechos imputados en la intención de destitución.

Igualmente, se le advirtió que podría presentar evidencia documental para sustentar sus alegaciones.

El 9 de marzo de 2005, la Oficina de Relaciones Industriales refirió al Secretario del DTOP el informe del Oficial Examinador que dirigió la vista administrativa informal y recomendó que se ratificara la intención de destituir al recurrente. El Oficial Examinador concluyó que el recurrente cometió las infracciones número 19, 28, 29, 34 y 35 del Reglamento de Conducta.

El 14 de abril de 2005, el Secretario del DTOP confirmó la destitución del recurrente de la agencia. En esa comunicación, el recurrente fue advertido de su derecho de revisar esta determinación ante la CASARH. El 22 de abril de 2005, el recurrente presentó su apelación ante la CASARH en la que solicitó que se revocara la resolución del DTOP mediante la cual fue destituido por ordenar, mientras se desempeñaba como Director de la Región de Humacao del DTOP, que se utilizara propiedad pública para asfaltar el estacionamiento y el camino de acceso de una embotelladora de agua en el Barrio Guayabota de Yabucoa, que es propiedad privada.

Durante la vista pública ante la CASARH, celebrada el 17 de junio y el 22 de agosto de 2008, el recurrente presentó como única prueba su testimonio. Por su parte, el DTOP presentó la declaración de la Sra. Carmen Zoraida Díaz Soto y del Sr. Moisés Rivera Oneill, ambos empleados del DTOP que trabajaron en la investigación administrativa del caso. Además, el DTOP presentó la siguiente prueba documental: (1) Informe de auditoría DB-03-37 de la Oficina del Contralor; (2) Informe de la Oficina de Recursos Humanos de 28 de junio de 2004; (3) Carta de intención de destitución de 16 de agosto de 2004; (4) Informe de la vista informal celebrada ante el DTOP, con fecha de 9 de marzo de 2005, y (5) Carta de confirmación de destitución de 15 de abril de 2004.

Luego de un largo trámite procesal que incluyó la presentación de dos recursos de *Mandamus* ante este Tribunal, mediante Resolución emitida el 16 de enero de 2009, notificada y archivada en autos el 28 de enero de 2009, la CASARH confirmó la decisión recurrida. Concluyó que la prueba presentada en el caso de autos fue suficiente para establecer que el recurrente actuó de manera negligente porque no cumplió adecuadamente con sus funciones de Director Regional. Sostuvo que a causa de su negligencia y descuido se cometieron otras infracciones, como uso indebido de fondos y bienes del Departamento, incumplimiento con las normas del DTOP establecidas mediante leyes, reglamentos, boletines y cartas circulares y utilizar su posición para fines no compatibles con el servicio público.

De acuerdo con la prueba desfilada, el trabajo realizado por instrucciones específicas del Representante del Distrito Número 34 ascendió a $27,884.00. Esta cantidad incluye el costo de los materiales, equipo, sueldo y dietas de los empleados. También puntualizó que el DTOP le garantizó al recurrente el debido proceso de ley al notificarle los cargos imputados en su contra y celebrar una vista informal antes de su destitución. Finalmente, al evaluar si el castigo impuesto al recurrente fue razonable de acuerdo con las faltas cometidas, concluyó que para las infracciones incurridas por el recurrente está contemplada la destitución, además, según el Artículo 6(o) del Reglamento de Conducta "cuando un empleado cometa varias infracciones se le impondrán las medidas más severas, así como las que procedan en cada una de las infracciones cometidas."

La Oficial Examinadora a quien la CASARH delegó la apelación administrativa del caso de epígrafe, hizo las siguientes determinaciones de hechos: [1]

"(1) El 15 de agosto de 1977, el Ingeniero Félix Caraballo Ortiz comenzó a laborar para el DTOP.

(2) El apelante se desempeñó en la Oficina Regional de Humacao como Director Regional II desde abril [de] 1995 a diciembre de 2000, y como Ingeniero IV desde diciembre de 2000 hasta que fue destituido el 14 de abril de 2005.

(3) El 2 de junio de 2003, la Oficina del Contralor del Estado Libre Asociado de Puerto Rico rindió Informe de Auditoría DB-03-37. La auditoría era concerniente al DTOP, Oficina Regional de Humacao, y comprendió el período del 1 de julio de 1998 a 30 de junio de 2001.

(4) Dicho informe de Auditoría DB-03-37, dispone entre otras cosas, lo siguiente: (1) que el Representante del Distrito efectuó las gestiones para que se realizara la pavimentación del camino y estacionamiento de la embotelladora en atención a una solicitud que hizo el mismo dueño de la embotelladora; (2) que fue dicho Representante quien se comunicó con el apelante, Director Regional para aquel entonces, para que dicho trabajo se realizara; y (3) que el apelante como Director Regional, permitió que el Representante participara en la selección de los proyectos de pavimentación sin tener la facultad para ello.

(5) En comunicación escrita fechada 28 de junio de 2004, la Sra. Carmen Z. Díaz Soto, Directora de Recurso Humanos de DTOP, le informó al Sr. Moisés Rivera Oneill lo siguiente:

CASO: INFORME DE AUDITORÍA DB-03-37

"El pasado mes de octubre de 2003, la Oficina de Auditoría Interna del Departamento refirió a nuestra Oficina el Informe de epígrafe, para la aplicación de las medidas correctivas correspondientes. Dicho informe recoge los hallazgos de una auditoría realizada en la Oficina Regional de Humacao por parte de la Oficina del Contralor de Puerto Rico. La misma comprende desde 1 de julio de 1998 hasta junio de 2001.

Los empleados envueltos en estos hechos lo son: el Sr. Félix Caraballo Ortiz, antes Director Regional, actualmente Ingeniero IV, y el Sr. Héctor Rodríguez Torres, Supervisor de la Zona, ambos empleados regulares

de la Agencia.

La investigación realizada por la División B de Auditoría de Departamentos y Agencias de la Oficina del Contralor, indica que el Sr. Héctor Rodríguez Torres participó en el arrendamiento de [una máquina niveladora] *bulldozer* D-5, número de serie 94J1356, equipo 1 y un[a motoniveladora] *grader* modelo 12-E [marca] Caterpillar, número de serie 99E7287, equipo 2. Ambos equipos eran propiedad de otras dos personas.

Estos equipos fueron arrendados por la Oficina Regional en varias ocasiones entre septiembre de 1997 y diciembre de 2000 a un costo total de $243,000.00. Los contratos de arrendamientos se hicieron a nombre de un contratista que no fue identificado en la Oficina del Contralor en su informe y a quien ellos identifican como contratista 2. El Sr. Rodríguez Torres era el encargado de evaluar las cotizaciones de los proveedores de equipo.

Alegadamente, en el proceso de evaluación de las cotizaciones, el supervisor de zona favoreció la selección de ambos equipos mediante la falsificación de cotizaciones. En los récords de cotizaciones que preparó la Oficina Regional para la otorgación de estos contratos se señaló que tres (3) proveedores habían [sic] cotizado. Que uno de éstos no tenía el equipo disponible, el otro no lo tenía y un tercero, que tenía ambos equipos [cotizó] a un costo de $5,000 y $4,500 mensuales respectivamente. Los récords de cotizaciones fueron firmados por el Sr. Héctor Rodríguez Torres, certificando [sic] que había realizado las cotizaciones.

Para el equipo 1, el Departamento realizó 31 contratos y 5 extensiones de contrato a un costo total de $180,000 al contratista 2, quien no fue identificado en el informe que entregara el Contralor. Mientras que el equipo 2 fue arrendado por la Oficina Regional desde julio de 1999 hasta diciembre de 2000, mediante 11 contratos y 3 extensiones de contratos a un costo de $63,000 al contratista 2.

Según la investigación, el Sr. Rodríguez tenía intereses económicos en ambos equipos. Ya que dos Operadores de Equipo, que no fueron identificados, indicaron que tenía conocimiento de que el mismo era propiedad del Supervisor de Zona y del Contratista 1 quien tampoco fue identificado. Además, indicaron que el equipo fue utilizado para realizar trabajos privados mientras estuvo arrendado en la Oficina Regional. Alegaron que era el Supervisor de Zona quien autorizaba y pagaba por estos trabajos.

El equipo 2 fue comprado por el Sr. Rodríguez en una subasta junto a otros cuatro (4) equipos, a un costo de $25,000, de los cuales $20,000 le fueron prestados por un comerciante que señaló que el contratista 1 participó de [sic, en la] adquisición de este equipo.

La investigación determinó que el Sr. Rodríguez Torres recibió beneficios económicos por la cantidad de $68,250, de los contratistas 1 y 2.

El segundo hallazgo que señaló la investigación es la utilización de materiales, equipo y personal de [la] Oficina Regional para pavimentar el estacionamiento y el camino de acceso de una compañía de embotellamiento de agua ubicada en Yabucoa. Los trabajos fueron realizados durante horas laborables desde el 28 de mayo al 24 de junio de 1998, por la Brigada Intensivo de la Oficina Regional, esto alegadamente por órdenes del Sr. Félix Caraballo Ortiz, Director Regional, para ese entonces.

Esto a un costo total para el Departamento de $27,884.00 desglosados de la siguiente manera:

| | |
|---|---|
| Asfalto | $18,358.00 |
| Sueldo de empleados | $3,519.00 |
| Equipo pesado | $2,712.00 |
| Mogolla | $2,700.00 |

| | |
|---|---|
| Aceites (MC-30) | $373.00 |
| Dietas de empleados | $222.00 |
| | $27,884.00 |

El entonces Representante del Distrito #34 les confirmó a los auditores que él hizo las gestiones en la Oficina Regional para que se pavimentara el camino de acceso y estacionamiento de la compañía de agua. Aceptó además, haberse comunicado con el entonces Director Regional, señor Félix Caraballo Ortiz, para la realización de dichos trabajos.

Mientras el capataz de la brigada indicó que por espacio de tres días semanales, durante un mes de trabajo, con personal, material y equipo del Departamento de Trabajo y Obras Públicas permanecieron trabajando en la compañía embotelladora de agua. Los informes de trabajo de mayo, junio y julio así lo indican.

El tercer hallazgo señala el hecho de que las cotizaciones para el arrendamiento de equipo pesado fueron realizadas por el Supervisor de Zona y no por un Subdelegado Comprador. En este caso, el Sr. Félix Caraballo Ortiz, en su función de Director, le asignó al Sr. Héctor Rodríguez Torres hacer las cotizaciones a pesar de que éste no tenía nombramiento de Subdelegado Comprador que expide la Administración de Servicios Generales. Más aún cuando se comprobó que la Oficina Regional contaba con un Subdelegado Comprador.

## ANÁLISIS

Sr. Félix Caraballo Ortiz, Ex Director de la Oficina Regional de Humacao, así como el Sr. Héctor Rodríguez Torres, Supervisor de Zona, incurrieron en varias violaciones a las normas de conductas establecidas en el Artículo 7 del Reglamento de Normas de Conducta y Medidas Disciplinarias del Departamento.

"Norma Núm. 3: Realizar eficientemente y con diligencia las funciones asignadas a su puesto y otras que se le asigne compatibles con éstas.

Norma Núm. 7: Vigilar, conservar y salvaguardar los bienes e intereses públicos que estén bajo su custodia.

Norma Núm. 8: Dedicar el tiempo laborable a asuntos propios del Departamento.

Norma Núm. 9: Utilizar material, equipo o vehículos del Departamento solamente para asuntos del Departamento.

Norma Núm. 10: Cumplir las Normas, Órdenes, Administrativas, Reglamentos, Reglas de Seguridad y otras que regulan las operaciones del Departamento.
Norma Núm. 22: No realizar funciones o tareas que conllevan conflicto de intereses con sus obligaciones como empleado del Departamento.

Norma Núm. 23: Abstenerse de observar conducta incorrecta o lesiva al buen nombre de la Agencia o al Gobierno de Puerto Rico."

Al incurrir en estas violaciones, ambos empleados incurren además en las siguientes infracciones:

"Infracción Núm. 19: Negligencia y descuido en la ejecución de tareas, deberes y obligaciones.

Infracción Núm. 28: Apropiación ilegal o uso y manejo indebido de fondos y bienes del Departamento.

Infracción Núm. 29: No cumplir con las normas establecidas mediante Ley, Reglamento y Boletines

Administrativos que rigen el Departamento.

Infracción Núm. 35: Ofrecer servicios profesionales o desarrollar otras actividades si la naturaleza de dichos intereses, servicios o actividades, pueden desviar su independencia de criterio o entrar en conflicto con los intereses públicos que le estén encomendados."

El señor Félix Caraballo Ortiz, en sus funciones de Director incurrió, además, en la siguiente infracción:

"Infracción Núm. 34 Utilizar su posición oficial para fines políticos u otros fines no compatibles con el servicio público"

El Reglamento Normas de Conducta y Medidas Disciplinarias del Departamento en su Artículo 6, Inciso O, establece lo siguiente:

"Cuando un empleado cometa varias infracciones, se le impondrán las medidas más severas, así como también las que procedan en cada una de las infracciones cometidas."

En el caso de las infracciones número 19, 29, y 34, la medida disciplinaria correspondiente va desde una amonestación verbal de parte del Supervisor sucesivamente hasta la destitución. La infracción número 35, conlleva una suspensión de empleo y sueldo de diez días laborables, esto en caso de que se cometa por primera vez. Finalmente, la infracción número 28, según el Reglamento Núm. RI-OP-200201, es causa justa y suficiente para la destitución.

**RECOMENDACIÓN**

En vista de que ambos empleados incurrieron en faltas graves a sus deberes y al Reglamento del Departamento así como a varias disposiciones de la Ley de Ética Gubernamental, se recomienda se redacten las cartas de intención de destituciones a los señores Félix Caraballo Ortiz y Héctor Rodríguez Torres, concediéndoles el derecho a solicitar Vista Administrativa Informal." [Sic]

Dicho documento está firmado por el Sr. Moisés Rivera Oneill, Director de Oficina de Relaciones Industriales, debajo de Aprobado.

"(6) Mediante comunicación escrita fechada 16 de agosto de 2004 recibida por el apelante el 23 de agosto de 2004, firmada por el Sr. Moisés Rivera Oniell, Director de Oficina de Relaciones Industriales, se le informó al apelante sobre la intención de destitución. Dicha comunicación dispone lo siguiente:

"Conforme la facultad que me confiere la mencionada Ley 5, aprobada el 14 de octubre de 1975, según enmendada "Ley de Personal del Servicio Público de Puerto Rico" y armonía con las disposiciones que establece la base legal del Reglamento Núm. RI-OP-2002-01, Normas de Conducta y Medidas Disciplinarias.

4. El Artículo 4, Sección 4.6, Inciso 3 y el Artículo 6 y el Artículo 10, Sección 10.1 de la misma Ley.

5. El Artículo 9, Sección 91 y 9.2 del Reglamento de Personal Áreas Esenciales al Principio del Mérito.

6. El Artículo 9, Sección 9.2, Artículo 12, Sección 12.5, Inciso 5 Articulo 14, Sección 146, Reglamento de Personal de la Administración Central."

Le notifico la intención de destituirlo del puesto de Ingeniero IV que ocupa en la Oficina Regional de Humacao, por incurrir en las siguientes infracciones al Reglamento Núm. RI-OP-2002-01:

"Infracción Núm.19: Negligencia y descuido en la ejecución de sus tareas, deberes y obligaciones.

Infracción Núm. 28: Apropiación ilegal o uso de manejo indebido de fondos y bienes del departamento.

Infracción Núm. 29: No cumplir con las normas establecidas mediante Ley, Reglamentos y Boletines Administrativos que rigen en el Departamento.

Infracción Núm. 34: Utilizar su posición oficial para fines políticos partidistas o para otros fines no compatibles con el servicio público.

Infracción Núm. 35: Ofrecer servicios profesionales o desarrollar otras actividades si la naturaleza de dichos intereses, servicios o actividades, pueden desviar su independencia de criterio o entrar en conflicto con los intereses públicos que le están encomendados."

Estas infracciones están evidenciadas en el informe de auditoría que entregara la Oficina del Contralor. El mismo cubre desde el 1 de julio de 1998 al 30 de de junio de 2001 y reveló los siguientes hechos:

"1. Que la Oficina Regional de Humacao utilizó materiales equipo y personal para pavimentar el estacionamiento y el camino de acceso a una compañía embotelladora de agua, ubicada en una finca privada de Yabucoa.

2. Dichos trabajos se realizaron durante el período del 28 de mayo de 24 de junio de 1998, por la Brigada de Bacheo Intensivo de la Oficina Regional de Humacao.

3. La evidencia tiende a demostrar que usted, estando en sus funciones de Director Regional, fue quien impartió las instrucciones a solicitud del entonces Representante del Distrito Núm. 34.

4. El costo de estos trabajos ascendió a $27,884.00, entre materiales, equipo, sueldo de empleados y dietas de empleados.

5. El hecho de que alegadamente, usted le asignó tareas de Subdelegado Comprador al Sr. Héctor Ortiz Torres, cuando éste era Supervisor de Zona, y no contaba con el nombramiento de Subdelegado Comprador que expide la Administración de Servicios Generales."

Conforme a la jurisprudencia establecida por el Tribunal Supremo de Puerto Rico en el caso de *Torres Solano v. P.R.T.C.,* adoptada en el Reglamento, *supra,* usted tiene derecho a una vista administrativa informal. Por lo tanto, deberá notificar por escrito dentro de diez días, contados a partir de la fecha en que reciba esta notificación, si asistirá acompañado de su representación legal o no. O puede presentar por escritos las razones por las cuales usted entiende que el Departamento no deba destituirlo el día de la vista si así lo prefiere.

Se le apercibe que la incomparecencia o al ausencia de presentación de su escrito, podrá ser catalogado como falta de interés, por lo que la Autoridad Nominadora podrá tomar la acción que entienda pertinente conforme a la reglamentación aplicable ...".

(7) Mediante comunicación escrita fechada 25 de agosto de 2004 firmada por el Lcdo. Héctor Aníbal Castro-Pérez, abogado del apelante, y dirigida al Sr. Moisés Rivera Oniell, Director de la Oficina de Relaciones Industriales, se solicitó *vista administrativa informal.*

(8) Mediante comunicación escrita fechada 27 de septiembre de 2004, se le notificó al apelante dé vista administrativa informal pautada para el 22 de octubre de 2004.

(9) Mediante comunicación escrita fechada 9·de marzo de 2005, firmada por el Subdirector de la Oficina de Relaciones Industriales sobre el Informe de vista administrativa informal caso empleado Félix Caraballo, se le informó al Ing. Gabriel Alcaraz Emmanuelli. Secretario del DTOP, lo siguiente:

"Al Sr. Félix Caraballo Ortiz, quien se desempeña como Ingeniero IV en la Oficina Regional de Humacao, se le imputa el haber incurrido en violación à varias infracciones al Reglamento de Normas de Conductas y Medidas Disciplinarias.

La evidencia presentada para sostener dichas infracciones deriva del Informe de Auditoria DB-03-37 realizado por la Oficina del Contralor de Puerto Rico. En síntesis se le acusa al ingeniero Caraballo que mientras se desempeñaba como Director Regional de Humacao, emitió directrices para la utilización de equipo de materiales de construcción del Departamento de Transportación y Obras Públicas (el Departamento) para pavimentar el camino de acceso de una compañía de Agua por instrucciones del entonces Representante del Distrito número 34.

De acuerdo con el Informe de Auditoria, se le recomendó al Secretario del Departamento que tomara las medidas necesarias pertinentes para que no se repitan los hallazgos 1 y 2 del Informe. Al examinar el hallazgo 1, éste se refiere al entonces Supervisor de Zona, Héctor Rodríguez Torres, por lo que no entraremos en su consideración, ya que el caso que nos ocupa es del Ingeniero Caraballo.

El hallazgo 2 involucra directamente al Ingeniero Caraballo al indicar que por directrices de él, se utilizó material, equipo, personal de la Oficina Regional para pavimentar estacionamiento y camino de acceso a la Compañía de Agua.

Según la Auditoría, el establecimiento de la compañía fue mediante un préstamo del Banco de Desarrollo Económico con el propósito de distribuir agua destilada a la industria agrícola, farmacéutica, comercio y residentes del área. Dicha compaña fue incorporada en el Departamento del Estado el 23 de julio de 1998.

La misma estaba localizada en una finca privada en el Barrio Guayabota del Municipio de Yabucoa. Esta finca fue entregada al Banco de Desarrollo Económico como dación en pago de la deuda porque la finca no podía seguir pagando la deuda.

El auditor señaló que el Representante del Distrito 34, se comunicó con el Ing. Félix Caraballo Ortiz para indicarle el proyecto a realizarse. A esto, el Auditor concluyó que fue una participación indebida del representante que afectó el control administrativo que la Oficina Regional debió tener de los proyectos, Para llegar a esta conclusión, el Auditor se basó en la Opinión del Tribunal Supremo en el caso de *Noriega v. Hernández* en la cual señaló que resulta dañina la práctica de un legislador de poner en vigor y administrar las leyes.

En la vista administrativa informal, el representante legal del Ingeniero Caraballo, Lcdo. Héctor Aníbal Castro Pérez, manifestó los siguientes planteamientos en defensa de su representado:

Que la Compañía se estableció del Gobierno de Puerto Rico.

Que dicha compañía está localizado [sic] a una milla de la carretera principal en un camino que da acceso a varios residentes del sector. Por lo tanto no es un camino privado como alega el Informe de Auditoría.

Que lo que se hizo fue repavimentar y no pavimentar como alega el Auditor.

Que dicho trabajo se hizo conforme a la Resolución Conjunta de la Cámara, RC. 289 del 10 de agosto de 1997,

sobre el Distrito Representativo #34, Acápite 2, DTOP- Humacao, página 57; y lee como sigue: "reconstrucción y repavimentación de caminos de diferentes barrios del Municipio de Yabucoa".

Que las instrucciones las recibió del Departamento."

El licenciado Castro señaló que es perfectamente normal que si el Gobierno facilitó el préstamo a esta Compañía para el desarrollo de empleado en dicha área y para facilitar agua a la industria agrícola y residente, también facilite el desarrollo estructural como por ejemplo, la línea eléctrica. El licenciado preguntó, porqué no se acusó a la Autoridad de Energía Eléctrica o al Secretario de Transportación y Obras Públicas o al Representante de la Cámara. Simplemente porque no hay ilegalidad porque es una acción propiciada por el Gobierno para el desarrollo económico del sector. Además, preguntó ¿quién es el Sr. Caraballo para decidir dónde y cuándo repavimentar? El Ingeniero Caraballo siguió instrucciones de sus supervisores. Por último, señaló que nada de lo plantado por él fue investigado por el Auditor porque no surge del Informe de Auditoría. En adición añadió que espera que se tome en consideración, además de sus planteamientos, el récord de excelencia que tiene el Ingeniero Caraballo laborando para el Departamento durante 27 años de su vida. Después de escuchar los alegatos, [el] licenciado Castro no presentó documentos ni testigos que refuercen el contenido de la Oficina de Auditoría del Contralor (DEB-03-37) del 2 de junio de 2003.

### DERECHO Y ANÁLISIS

El Reglamento de Normas y Conductas Disciplinarias del Departamento de Transportación y Obras Públicas en su Articulo 6, Inciso 1, sobre disposiciones generales establece que: "cuando la conducta de un empleado, a pesar de las orientaciones y directrices que verbalmente o por escrito le dirija el supervisor, amerite que se le imponga a éste medidas disciplinarias, el supervisor procederá según el procedimiento que dispone estas normas internas". También el inciso O del mismo Reglamento establece: "Cuando un empleado cometa varias infracciones se le impondrá la medida más severa; así como también las que procedan en cada una de las infracciones cometidas".

También, el Reglamento de Normas de Conductas y Medidas Disciplinarias del Departamento de Transportación y Obras Públicas establece distintas infracciones aplicables a este caso, entre ellas:

"(A) Infracción Núm. 19: "Negligencia o descuido en la ejecución de sus tareas, deberes y obligaciones". Esta infracción establece como medida disciplinaria por el Supervisor al empleado la amonestación escrita y por el Secretario la reprimenda escrita, suspensión de empleado por 10 días laborables o la destitución de empleo.

(B) Infracción Núm. 28: "Apropiación ilegal o uso y manejo indebido de fondos y bienes del Departamento." Esta infracción establece como medida disciplinaria por el Secretario al empleado la destitución de su puesto.

(C) Infracción Núm. 29: "No cumplir con las normas establecidas mediante ley, reglamentos y boletines administrativos que rigen en el Departamento". Esta infracción establece como medida disciplinaria por el Supervisor al empleado la amonestación verbal y la amonestación escrita y por el Secretario la suspensión de empleo y sueldo por 10 días laborables o la destitución del puesto.

(D) Infracción Núm. 34: "Utilizar su posición oficial para fines políticos partidistas u otros fines no compatibles con el servicio público."

(E) Infracción Núm. 35: "Ofrecer servicios profesionales, o desarrollar otras actividades, si la naturaleza de dichos intereses, servicios o actividades, pueden desviar su independencia de criterio o entrar en conflicto con los interés públicos que le están encomendados" Esta infracción establece como medida disciplinaria por el Secretario la suspensión de empleo y sueldo por 10 días laborables o la destitución de puesto".

Además, el Reglamento antes citado, en Artículo 6, Inciso M, sobre disposiciones generales del mismo Reglamento establece lo siguiente: "En caso de cualquier otra conducta incorrecta que afecte el buen funcionamiento o se considere perjudicial a los mejores intereses del Departamento, aun cuando no haya sido específico en las infracciones, se aplicarán las medidas correctivas de acuerdo con la gravedad de la falta."

## RECOMENDACIÓN

Por los hechos antes expuestos y concluyendo que el Ing. Félix Caraballo Ortiz violentó las infracciones números 19, 28, 29, 34, y 35 del Reglamento de Normas de Conductas y Medidas Disciplinarias del Departamento de Transportación y Obras Públicas, recomendamos que se mantenga la intención del Secretario de destituirlo de su puesto de Ingeniero IV en la Oficina Regional de Humacao del DTOP.

(10) Mediante comunicación escrita fechada 14 de abril de 2005 firmada por el Sr. Gabriel Alcaraz Emmanuelli, Secretario de DTOP, se le informó al apelante de la confirmación de destitución. La misma dispuso lo siguiente:

"Conforme a la facultad que me confiere la Ley Núm. 184 de 3 de agosto de 2004, conocida como Ley de Recursos Humanos del Estado Libre Asociado de Puerto Rico, según enmendada, y en armonía con las disposiciones que establece la base legal del Reglamento Núm. RI-OP-2002-01 "Normas de Conducta y Medidas Disciplinarias del Departamento de Transportación y Obras Públicas", aprobado el 1 de abril de 2002, confirmo la destitución del puesto de Ingeniero IV que ocupa en la Oficina Regional de Humacao.

El 23 de agosto del 2004, usted recibió una carta en la cual se le notificaba la intención de tomar medidas disciplinarias en su contra. Según solicitado por usted, se le citó a una vista administrativa informal. Analizada la evidencia y argumentos presentados por usted, confirmo la destitución.

De usted no estar de acuerdo con esta determinación, tendrá un período de treinta días consecutivos contados a partir de la fecha del recibo de esta comunicación…".

(11) En la vista pública celebrada el 22 de agosto de 2008, el apelante declaró lo siguiente: (1) que él entendía que el camino que pavimentó era municipal; (2) que habían fondos asignados para la repavimentación; (3) que el Representante Papo García fue el que le asignó la tarea de pavimentar, no obstante, que el mismo no era su supervisor y que no podía darle instrucciones de lo que tenía que hacer.

Inconforme con esta determinación, el 2 de marzo de 2009, el peticionario presentó el Recurso de Revisión Administrativa de epígrafe. Formula los siguientes señalamientos de error:

"(1) La Resolución emitida por CASARH es una que no está sostenida con evidencia sustancial en el récord.

(2) El foro administrativo violentó los derechos constitucionales del apelante-recurrente, con la dejadez e inercia que demostró en la apelación del mismo.

(3) La admisión de documentos en contra de las Reglas de Evidencia y/o del Debido Proceso de Ley.

(4) Al no declarar con lugar la presente apelación, dado la determinación de no responsabilidad del aquí apelante-recurrente, emitida por la Oficina de Ética Gubernamental.

(5) Al actuar de manera parcializada en contra del aquí apelante-recurrente."

## II

En nuestro ordenamiento jurídico es un principio esencial que las decisiones o resoluciones, al igual que las interpretaciones de las agencias administrativas, merecen gran consideración y respeto. *P.C.M.E. v. J.C.A.,* 166 D.P.R. 599, 614 (2005).

En consecuencia, la revisión judicial de las determinaciones de las agencias administrativas "se limita a determinar si la agencia actuó arbitraria o ilegalmente o de forma tan irrazonable que su actuación constituye un abuso de discreción". *Fuertes y otros v. A.R.PE.,* 134 D.P.R. 947, 953 (1993). No obstante, esa deferencia no significa que los tribunales apelativos hayan renunciado a la función revisora en aquellas instancias que son apropiadas y meritorias. *Id.*

Las determinaciones de hechos de los organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotar tal presunción. *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987).

De ahí que la función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos sea de carácter limitado. Por consiguiente, debemos circunscribirnos a analizar los siguientes aspectos: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho del organismo administrativo fueron correctas. *Pacheco v. Estancias de Yauco,* 160 D. P.R. 409, 431 (2003).

Por esta razón, los tribunales apelativos no debemos alterar las determinaciones de hechos suscritas por las agencias administrativas si se basan en evidencia sustancial que obra en el expediente administrativo al considerarlo en su totalidad. Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A sec. 2175.11. El TSPR ha reiterado en numerosas ocasiones que la "evidencia sustancial" es aquella "evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *P.C.M.E. v. J. C.A., supra,* a la pág. 615; *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 75 (2000); *Misión Ind. P. R. v. J.P.,* 146 D.P.R. 64, 131 (1998); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

La doctrina de la "evidencia sustancial" busca evitar que el tribunal revisor sustituya el criterio del organismo administrativo en materia especializada por el suyo. *P.R.T.C. v. J. Reg. Tel. de P.R.,* 151 D.P.R. 269, 282 (2000). Así pues, no le corresponde a los tribunales pasar juicio sobre los conflictos de prueba entre opiniones especializadas o científicas. *Véase, Misión Ind. P.R. v. J.C.A.,* 145 D.P.R. 908, 940 (1998).

Por otro lado, la sección 3.13, incisos (c) y (e), de la Ley de Procedimiento Administrativo Uniforme establece lo siguiente:

"(c) El funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico. [...]

(e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento.

El objetivo principal de todo proceso adjudicativo es la búsqueda de la verdad y la justicia. Las reglas procesales y en particular las de evidencia, persiguen viabilizar este objetivo; no entorpecerlo. *Junta de Relaciones del Trabajo de Puerto Rico v. Autoridad de Comunicaciones de Puerto Rico,* 110 D.P.R. 879, 884 (1981). La razón por la cual no se aplican las Reglas de Evidencia en los procesos administrativos es tratar de evitar que se impongan las mismas trabas procesales que en los tribunales de justicia, de modo que éstos sean

ágiles y sencillos. *Martínez v. Tribunal Superior*, 83 D.P.R. 717, 720 (1961). El hecho de que los procesos administrativos sean ágiles y sencillos persigue, además de cumplir con el fin de una solución rápida, justa y económica del procedimiento, que las personas legas participen y le den un uso eficiente a tales procesos. El carácter informal y flexible, que distingue a los procesos administrativos, permite que el juzgador de hechos conozca toda la información pertinente para dilucidar la controversia que tiene ante sí.

No obstante, los principios fundamentales de las reglas procesales y de evidencia podrán utilizarse en los procedimientos administrativos en tanto su uso no sea incompatible con la naturaleza de los mismos. *Oficina de Ética Gubernamental v. Rodríguez Martínez,* 159 D.P.R. 98, 112 (2003).

### III

El recurrente alega que la CASARH violó sus derechos constitucionales porque dilató injustificada e irrazonablemente la resolución de su apelación. Plantea que de no haber sido por los tres recursos de *Mandamus* que presentó, la CASARH no hubiera pautado una vista administrativa en el caso de autos. No obstante, aunque el recurrente presentó tres recursos de *Mandamus*, uno ante el TPI y dos ante este Tribunal, ninguno de estos recursos fue declarado con lugar. [2]

El recurrente sostiene que la tramitación azarosa de su apelación demuestra la animosidad de la CASARH en su contra. Además, alega que la agencia estaba obligada a resolver su recurso en el término de seis meses, según lo establecido por la Ley de Procedimiento Administrativo Uniforme, *supra*. No le asiste la razón.

Los términos establecidos en la Ley de Procedimiento Administrativo Uniforme, *supra*, tienen que ser interpretados como directivos y no jurisdiccionales. *Laboratorio Clínico Instituto Central v. Laboratorio Clínico Borinquen*, 149 D.P.R. 121 (1999); *J. Exam. Tec. Med. v. Elías et al.*, 144 D.P.R. 483 (1997).

El recurrente alega que la CASARH violó sus derechos constitucionales al admitir como evidencia "una supuesta copia de un informe del Contralor que carecía de certificación alguna" y que no tuvo oportunidad adecuada de realizar un contrainterrogatorio sobre el mismo porque el DTOP no presentó como testigo a la persona que preparó el informe. Asimismo, plantea que el DTOP no presentó evidencia sustancial de que hubiera violado disposición legal alguna y que su despido fue justificado únicamente con el Informe de Auditoría realizado por la Oficina del Contralor. Alega que este Informe carece de validez porque en la investigación que realizó la Oficina de Ética Gubernamental (OEG) se determinó que no existencia evidencia que sustentaran los cargos imputados en contra del recurrente. Por último, alega escuetamente que la Resolución emitida por la OEG constituye en el caso de autos cosa juzgada en su modalidad de impedimento colateral por sentencia. No le asiste la razón en ninguno de sus planteamientos sobre el Informe de la Oficina del Contralor.

Aunque tanto el proceso ante la OEG, como el proceso ante la CASARH tienen su origen en unos mismos hechos, no se trata de la misma causa de acción. Ante la OEG, al recurrente se le imputó infracción al Artículo 3.2 de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1822 y a los Artículos 6(A) (1) (2) (6) (7) y 6(F) del Reglamento de Ética Gubernamental, Reglamento Núm. 4827 de 20 de noviembre de 1992. Mientras que ante la CASARH, se dilucidaron infracciones que cometió el recurrente contra el Reglamento de Conducta, en específico se le imputaron las siguientes infracciones: (1) Infracción Núm. 19: Negligencia y descuido en la ejecución de tareas, deberes y obligaciones; (2) Infracción Núm. 28: Apropiación ilegal o uso y manejo indebido de fondos y bienes del Departamento; (3) Infracción Núm. 29: No cumplir con las normas establecidas mediante Ley, Reglamento y Boletines Administrativos que rigen el Departamento; (4) Infracción Núm. 35: Ofrecer servicios profesionales o desarrollar otras actividades si la naturaleza de dichos intereses, servicios o actividades, pueden desviar su independencia de criterio o entrar en conflicto con los intereses públicos que le estén encomendados; y (5) Infracción Núm. 34: Utilizar su posición oficial para fines políticos u otros fines no compatibles con el servicio público. De modo que las controversias planteadas ante estos foros administrativos

fueron distintas. El DTOP no fue parte del proceso ante la OEG y la determinación de destituir al recurrente se fundamentó en una investigación administrativa y la vista informal que celebró en octubre de 2004.

El recurrente tuvo la oportunidad de presentar prueba para refutar las imputaciones que se le hicieron acerca de violaciones al Reglamento de Conducta. Sin embargo, éste se limitó a formular alegaciones, entre ellas, que sólo cumplía con lo establecido en la Resolución Conjunta de la Cámara, RC. 289 del 10 de agosto de 1997, que seguía instrucciones del DTOP y que el camino que repavimentó era público y no privado.

Reconocemos que la OEG determinó que no podía concluirse que el acceso a la embotelladora fuera realmente propiedad privada y que no existía evidencia que demostrara de dónde provinieron los fondos utilizados para asfaltar la entrada de la embotelladora. **[3]** No obstante, el hecho de que no se hubiesen probado los cargos imputados al recurrente ante la OEG no significa que no existe evidencia sustancial en el expediente administrativo para sostener la destitución del recurrente.

El recurrente admitió que realizó la pavimentación en el Barrio Guayabota basándose en las instrucciones que le dio el Representante del Distrito Núm. 34, sin antes haber corroborado con sus supervisores la legalidad o corrección de dicha instrucción. A esos efectos, la transcripción verifica el siguiente intercambio testifical:

"Lic. Cintrón de Jesús: A usted se le destituyó por haber asfaltado hacia una embotelladora.

Félix Caraballo Ortiz: Por eso me destituyeron. [...]

Oficial Examinadora: Y que eso fue según las instrucciones, ¿de qué persona exactamente? [...].

Félix Caraballo Ortiz: Representante Papo García.

Oficial Examinadora: Que él estuvo allí con usted.

Félix Caraballo Ortiz: Correcto.

Oficial Examinadora: O sea que fue el Representante Papo García quien le indicó exactamente qué usted tenía que hacer en ese momento, en ese día o en esa fecha.

Félix Caraballo Ortiz: Correcto.

Yo fui con el Representante Papo García porque es [sic] unos fondos asignados de una resolución conjunta que él había asignado."

El informe de la Oficial Examinadora de CASARH no se basó solamente en el Informe de Auditoría preparado por la Oficina del Contralor, sino que incluyó el testimonio del recurrente en la vista pública, así como el informe preparado por la DTOP luego de la vista administrativa informal. Según la evidencia que obra en el expediente, somos del criterio de que el recurrente fue negligente en el cumplimiento de sus deberes ministeriales al seguir las instrucciones de un miembro de la Rama Legislativa y cometió las violaciones al Reglamento de Conducta que le fueron imputadas.

El recurrente no rebatió la presunción de corrección que cobija a las determinaciones administrativas, tampoco demostró de manera alguna que la actuación de la CASARH hubiese sido arbitraria, caprichosa o parcializada. Si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con ellas. *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881, 889 (1999). Al aplicar a este caso las normas de revisión

judicial de una decisión administrativa, concluimos que la resolución de la CASARH fue razonable y correcta, por lo que no se requiere la intervención de este Tribunal.

## IV

Por las razones y fundamentos discutidos, confirmamos la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 128

**1.** Las determinaciones de hechos se transcriben tal y como aparecen en el texto (Apéndice, págs 4-14).

**2.** El 30 de agosto de 2007, el recurrente presentó una demanda de *Mandamus*, caso número K PE 2007-3830, ante el TPI, Sala de Superior de San Juan; sin embargo, el 27 de septiembre de 2007 presentó una moción de desistimiento. El 28 de septiembre de 2007, el TPI dictó sentencia en este caso. Posteriormente, el 7 de mayo de 2008, el recurrente presentó un segundo recurso de *Mandamus,* pero esta vez ante este Tribunal. El 13 de junio de 2008, un panel hermano dictó sentencia en la que desestimó el caso número KLRX-2008-00050. Finalmente, por tercera ocasión, el 11 de diciembre de 2008, el recurrente solicitó un *Mandamus* (caso número KLRX-2008-00152). Mediante sentencia emitida el 23 de febrero de 2009, otro panel hermano de este Tribunal denegó la expedición del auto porque el recurso se tornó académico.

**3.** Aún así, el informe de la OEG no descartó que el recurrente hubiese cometido otras violaciones a disposiciones reglamentarias que no estaban bajo su jurisdicción. "La prueba presentada durante la Audiencia sostiene que las actuaciones del querellado se llevaron a cabo a instancias del entonces Representante de Distrito, Hon. Ángel "Papo" García de Jesús. Según su propio testimonio, este último se comunicó con el señor Caraballo Ortiz, quien al momento se desempeñaba como Director Regional del DTOP, y le solicitó que asfaltara el camino de acceso y el estacionamiento de la embotelladora de agua del Sr. Gerardo Márquez Veglio. […] Puntualizamos que el querellado, como Director Regional de una agencia ejecutiva, no estaba sujeto a las solicitudes y órdenes de un legislador […]. Por lo tanto, entendemos que una vez recibida la llamada telefónica del Representante García de Jesús, el querellado debió cerciorarse de la existencia, lenguaje, propósito y parámetros de la Resolución Conjunta. […] Sobre el querellado recaía la responsabilidad de asegurarse que los fondos del erario fueran utilizados de acuerdo con los propósitos y parámetros aprobados. Una vez cumplida esa responsabilidad y considerando el puesto de alta jerarquía ocupado por éste, debió brindar a sus subalternos directrices específicas respecto a las labores a ser realizadas. Al igual que todos los servidores públicos, el señor Caraballo Ortiz tenía la responsabilidad de velar por la correcta utilización del personal, fondos, instrumentos y equipo asignado a su agencia."