ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| SPECIAL CARE PHARMACY SERVICES LLC; SPS PHARMACY SERVICES, INC.; ADVANCED HOME CARE SERVICES WEST, INC.; VISION INFUSION SERVICES, INC.; ÓPTIMA INFUSION PHARMACY, INC. y ELEVA RECOVERY LLC H/N/C NOVA INFUSION<br><br>Recurridos<br><br>v.<br><br>METRO PAVÍA AT HOME, LLC<br><br>Recurrente<br><br>ALIVIA INFUSION SERVICES, LLC | KLRA202500213 | *Revisión Judicial*<br>Procedente del Departamento de Salud<br><br>Querella Núm.:<br>Q-24-04-010<br><br><br>Sobre:<br>Práctica No Autorizada de Servicios de Infusión; Violaciones a Ley Núm. 2 de 1975, Reglamentos 9084 y 9321 |

Panel integrado por su presidenta la Jueza Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico a 18 de junio de 2025.

Comparece ante nos, Metro Pavía At Home, LLC (en adelante, Metro Pavía o Recurrente), nos solicita que revisemos una *Resolución* notificada por el Departamento de Salud de Puerto Rico (en adelante, Departamento de Salud) del 16 de enero de 2025. En esta, el Departamento de Salud declaró *Con Lugar* la querella presentada por los recurridos, en la que impuso a Alivia Infusion Services LLC (en adelante, Alivia) y a Metro Pavía una multa de $30,000.00 a razón de $5,000.00 dólares por ocurrencia o Región de Salud. De igual forma, en su Resolución el

Número Identificador

SEN2025 _____

Departamento de Salud les impuso el cese y desista de la prestación de servicios de infusión en el hogar en todas las regiones de salud mediante su modelo de negocios.

Por los fundamentos que exponemos, *Confirmamos* la *Resolución* recurrida.

**I.**

El 16 de abril de 2024, Special Care Pharmacy Services LLC, SPS Pharmacy Services, Inc., Advanced Home Cares Services West, Inc., Vision Infusion Services, Inc., Óptima Infusion Pharmacy, Inc. y Eleva Recovery LLC h/n/c Nova Infusion (en adelante, partes recurridas) presentaron una *Querella* en contra de Alivia.[1] En la mencionada querella, arguyeron que Alivia proveía servicios de infusión en el hogar sin estar autorizada por el Departamento de Salud bajo la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, conocida como la *Ley de Certificados de Necesidad y Conveniencia*, 24 LPRA secs. 334, *et seq.* (Ley Núm. 2)*.* Por lo cual, le solicitaron al Departamento de Salud, que se declarara *Con Lugar* a la querella, y en su consecuencia que emitiera una orden de cese y desista a Alivia para que dejara de ofrecer servicios de infusión, ordenara también, la paralización de la consideración de las propuestas presentadas por Alivia y le impusiera una multa.[2]

Así las cosas, el 8 de mayo de 2024, Alivia presentó una *Moción de Desestimación de Querella*.[3] En la aludida moción, Alivia arguyó que no había incurrido en la violación alegada en la querella y que, por ende, no procedía la misma, ni los remedios solicitados en ella. Lo anterior, bajo el fundamento de que Alivia contaba con un contrato de servicios de enfermería con Metro

---

[1] Apéndice pág. 3.
[2] Id.
[3] Apéndice pág. 83.

Pavía, quien era una entidad debidamente autorizada para operar como agencia de salud en el hogar y que contaba con los correspondientes CNCs para ofrecer servicios de infusión en el hogar en todas las regiones de salud.

El 10 de mayo de 2024, el Departamento de Salud dictó una *Orden* en la que le solicitó a las partes recurridas a que informaran el por qué no se debía considerar a Metro Pavía como parte indispensable en el pleito.[4] En cumplimiento de orden, las partes recurridas presentaron el 30 de mayo de 2024, una *Moción en Cumplimiento de Orden: Enmienda a la Querella y Solicitud de Orden*.[5] Entre lo solicitado indicaron, que se enmendara la querella para incluir a Metro Pavía como parte indispensable.

El 26 de junio de 2024, Alivia presentó *Contestación a la Querella*, solicitando la desestimación de la querella presentada.[6]

Por otro lado, el 2 de julio de 2024, Metro Pavía presentó *Contestación a Querella Enmendada y Otros Extremos*.[7] En la referida, solicitó que, por los fundamentos expuestos, archivara la querella.

Posteriormente, el 8 de julio de 2024 Alivia nuevamente presentó *Moción de Desestimación de Querella*, la desestimación en su totalidad de la querella de epígrafe.[8]

Continuados los trámites legales, el 24 de julio de 2024, Metro Pavía presentó una *Solicitud de Desestimación*.[9] entre sus argumentos, adujo que las partes recurridas carecían de legitimación activa para entablar la causa de acción presentada. Además, arguyó que la querella no presentaba una reclamación

---

[4] Apéndice pág. 183.
[5] Apéndice pág. 185.
[6] Apéndice pág. 193.
[7] Apéndice pág. 231.
[8] Apéndice pág. 250.
[9] Apéndice pág. 376.

que justificara la concesión de un remedio en contra de Metro Pavía. Adicional, indicó que había actuado en estricto cumplimiento de ley. Así que, solicitó la desestimación de la querella en contra de Metro Pavía.

A tenor con lo anterior, Alivia presentó el 5 de agosto de 2024, *Moción Suplementaria en Apoyo de Solicitud de Desestimación de Querella*.[10] En la aludida moción, arguyó que procedía la desestimación de la querella y se prosiguiera con la evaluación de las propuestas de Alivia. Todo esto para evitar un ataque colateral o actuación ultra vires del Departamento de Salud.

Así las cosas, el 21 de agosto 2024, las partes recurridas presentaron *Oposición a Moción Suplementaria en Apoyo de Solicitud de Desestimación de Querella (Según Enmendada Mediante Orden de 6 de junio de 2024) Presentada por Alivia Infusion Services y Solicitud de Desestimación Presentada por Metro Pavía At Home*.[11] Solicitaron al Departamento de Salud que se declarara *No Ha Lugar* la Moción Suplementaria en Apoyo a Desestimación presentada por Alivia, se emitiera una orden de cese y desista dirigida a Alivia y Metro Pavía para que dejaran de ofrecer y desarrollar servicios de infusión. Además, requirieron que se ordenara la paralización de la consideración de las propuestas de CNCs presentadas por Alivia ante la División de Vistas Administrativas de SARP y se impusiera multas a Alivia por violaciones a la Ley Núm. 2, *supra*, y el *Reglamento del Secretario de Salud para Regir el Otorgamiento de Certificados de Necesidad y Conveniencia,* Reglamento Núm. 9084 de 17 de mayo de 2019, (Reglamento 9084).

---

[10] Apéndice pág. 411.
[11] Apéndice pág. 446.

Habida cuenta del cuadro procesal y fáctico reseñado, el 3 de enero de 2024, el Oficial Examinador, Valéry López Torres, emitió un *Informe del Oficial Examinador*.[12] En dicho informe, sugirió que el Secretario de Salud declarara *Con Lugar* la querella enmendada de epígrafe en lo que atañe a la prestación de servicios de infusión en el hogar. A su vez también sugirió que se le impusiera una multa máxima de $30,000.00 contra Alivia y Metro Pavía respectivamente, a razón de $5,000.00 por ocurrencia o región. Finalmente, sugirió que se ordenara a las querelladas Alivia y Metro Pavía el cese y desista de la prestación de servicios de infusión en el hogar en todas las regiones, mediante su modelo de negocios.

El 14 de enero de 2025, el Secretario de Salud emitió una *Resolución*, en la cual, acogió las recomendaciones del Oficial Examinador y en su consecuencia declaró *Con Lugar* la querella enmendada de epígrafe respecto a la prestación de servicios de infusión en el hogar.[13] Asimismo, impuso la multa máxima de $30,000.00 dólares contra Alivia y Metro Pavía respectivamente, a razón de $5,000.00 dólares por ocurrencia o región. Se le ordenó a su vez, el cese y desista a Alivia y Metro Pavía de la prestación de servicios de infusión en el hogar en todas las regiones, mediante su modelo de negocios. No obstante, declaró *Sin Lugar* la querella enmendada sobre la paralización sobre las solicitudes de CNC de Alivia en curso.

Inconforme con la Resolución emitida, el 5 de febrero de 2025, Metro Pavía presentó una *Solicitud de Reconsideración*.[14] Respectivamente, en el mismo día, Alivia presentó *Solicitud de Reconsideración Parcial de Resolución Notificada el 16 de enero*

---

[12] Apéndice pág. 501.
[13] Apéndice pág. 498.
[14] Apéndice pág. 530.

*de 2025*.[15] El 7 de marzo de 2025, el Departamento de Salud, declaró No Ha Lugar a ambas solicitudes de reconsideración.[16]

En desacuerdo, el 10 de abril de 2025, Metro Pavía acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL DEPARTAMENTO DE SALUD AL ABROGARSE JURISDICCIÓN PARA DILUCIDAR LA QUERELLA ENMENDADA.
>
> **SEGUNDO ERROR:** ERRÓ EL DEPARTAMENTO DE SALUD AL DETERMINAR QUE METRO PAVÍA AT HOME ES AGENTE, MANDATARIA O REPRESENTANTE DE ALIVIA, Y AL IMPONER UNA MULTA A METRO PAVÍA AT HOME BASADO EN DICHA DETERMINACIÓN.
>
> **TERCER ERROR:** ERRÓ EL DEPARTAMENTO DE SALUD AL DISPONER SUMARIAMENTE DE LA QUERELLA ENMENDADA EN ESTA ETAPA DE LOS PROCEDIMIENTOS.
>
> **CUARTO ERROR:** ERRÓ EL DEPARTAMENTO DE SALUD AL IMPONER A METRO PAVÍA AT HOME UNA MULTA QUE EXCEDE DE LOS LÍMITES LEGALES Y REGLAMENTARIOS.

El 4 de junio de 2025, las partes recurridas presentaron ante esta Curia su oposición.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, ("LPAUG"), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. La revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.

---

[15] Apéndice pág. 546.
[16] Apéndice pág. 571.

La Ley 38-2017, supra, es el estatuto que delimita el alcance de la revisión judicial de las decisiones administrativas ante el Tribunal de Apelaciones. Es decir, que únicamente puede presentarse un recurso de revisión judicial ante este Tribunal cuando exista una determinación final de una agencia administrativa. Oficina de Asuntos Monopolísticos del Departamento de Justicia y otro v. Abarca Health, LLC, 2025 TSPR 23, 215 DPR __ (2025).

Allí se establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor con las leyes y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia fue dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable.

Las exigencias de la Ley Núm. 73-2019, supra, también aplican a este procedimiento. Toda notificación de adjudicación de subasta o procedimiento de requerimiento de propuestas tiene que contemplar la aplicación de esta otra ley.

Del mismo modo, es norma reiterada que los procedimientos y las decisiones de los organismos administrativos están cobijados por una **presunción de regularidad y corrección**. Debido a ello, la revisión judicial se limita al examen de la razonabilidad de la actuación de la agencia. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, 2025 TSPR 33, 215 DPR __ (2025); Transp. Sonnell v. Jta. Subastas ACT, 2024 TSPR 82, 214 DPR __ (2024). Por ello, el tribunal revisor podrá intervenir con los foros administrativos cuando la decisión adoptada no está basada en evidencia sustancial, o ha errado en la aplicación de la ley, o cuando la actuación es arbitraria, irrazonable, ilegal o afecta derechos fundamentales. Jusino Rodríguez v. Junta de

Retiro, 2024 TSPR 138, 215 DPR ___ (2024); Voili Voila Corp. Et Al v. Mun. Guaynabo, 213 DPR 743, 754 (2024); Caribbean Communication v. Pol. de P.R., 176 DPR 978, 1006 (2009); JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009).

Conforme a ello, la norma general es que las **decisiones de las agencias administrativas** deben ser consideradas con **gran deferencia** por los tribunales apelativos, por razón de la experiencia y conocimiento especializado de éstas respecto a las facultades que se les han delegado. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra; Rolón Martínez v. Supte Policía, 201 DPR 26, 135 (2018); JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 186; Borschow Hosp. v. Jta. de Planificación, 177 DPR 545, 566 (2009).

Sin embargo, la deferencia hacia las decisiones administrativas no es automática. En Vázquez, Torres vs. Consejo Titulares et al, 2025 TSPR 56, 215 DPR ___ (2025) se estableció que:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B.

El Art. II, Sec. 7, de la Constitución de Puerto Rico prohíbe que cualquier persona sea privada de su libertad o propiedad sin un debido proceso de ley. LPRA, Tomo 1. Este derecho está protegido de igual forma por la Quinta y Decimocuarta Enmiendas de la Constitución de Estados Unidos. LPRA, Tomo 1; A la Orden

Shopping, S.E. v. A.E.E., 213 DPR 546, 555-556 (2024); PVH Motor v. ASG, 209 DPR 122, 130 (2022). Estas garantías constitucionales se extienden al ámbito administrativo. PVH Motor v. ASG, *supra*, pág.130; Aut. Puertos v. HEO, 186 DPR 417, 428 (2012).

En ese sentido, se exige que, como mínimo, en todo proceso adjudicativo se observen las salvaguardas siguientes: (1) notificación adecuada del proceso; (2) un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. PVH Motor v. ASG, *supra*, pág. 131; Vázquez González v. Mun. San Juan, 178 DPR 636, 643 (2010).

El deber de notificar a las partes una decisión administrativa de forma adecuada y completa no constituye un mero requisito, sino que va más allá debido a que una notificación insuficiente puede incluso provocar consecuencias adversas a la sana administración de la justicia. Picorelli López v. Depto. de Hacienda, 179 DPR 720, 737 (2010); Olivo v. Srio. de Hacienda, 164 DPR 165, 178 (2005). Específicamente, en el contexto del derecho administrativo la notificación es requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo en sus distintas etapas, por lo que el requisito de ser oído implica el de haber sido notificado. Mun. San Juan v. Plaza las Américas, 169 DPR 310, 329 (2006). Así, pues, se obtiene un balance justo entre los derechos de todas las partes y se logra un ordenado sistema de revisión judicial. Picorelli López v. Depto. de Hacienda, *supra*, pág. 737.

Cuando ello no ocurre, el Tribunal Supremo ha sentenciado que una notificación defectuosa de una determinación tomada por

las agencias administrativas **priva de jurisdicción** al foro revisor para entender el asunto en disputa, lo que **impide que comience a transcurrir el término para recurrir** de cualquier determinación administrativa y, consecuentemente, **violenta el derecho al debido proceso de ley de la parte afectada**. St. James Sec. v. AEE, 213 DPR 366, 380 (2023); PVH Motor v. ASG, *supra,* pág. 132. (Énfasis nuestro).

En lo atinente a la materia que nos ocupa, el debido proceso de ley, en su vertiente procesal, se extiende al ejercicio de las facultades adjudicativas delegadas a las agencias, esto por su intervención directa con intereses de estirpe constitucional. Almonte *et al*. v. Brito, 156 DPR 475, 481 (2002). La adjudicación constituye el procedimiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que corresponden a una parte. De este modo, la ejecución de la referida garantía necesariamente debe propender al ejercicio de un proceso uniforme para todos los involucrados.

Sobre ello, la Ley 38-2017, *supra*, LPAUG incorpora en sus disposiciones los criterios necesarios para imprimir legalidad a los procesos administrativos de adjudicación. En particular, la sección 3.1 (a) del mencionado estatuto, así como la jurisprudencia interpretativa pertinente, reconocen a todas las partes en un procedimiento adjudicativo las siguientes garantías mínimas del debido proceso de ley en su vertiente procesal: a) notificación adecuada de los cargos o querellas o reclamos contra las partes; b) derecho a presentar evidencia; c) derecho a una adjudicación imparcial y; derecho a que la decisión sea basada en el expediente. 3 LPRA sec. 9641 (a); Álamo Romero v. Adm. de

Corrección*,* 175 DPR 314, 329 (2009); Almonte *et al*. v. Brito, *supra*, pág. 482.

Las antedichas salvaguardas constituyen el medio para asegurar que un organismo administrativo tenga ante sí todos los elementos de juicio necesarios para emitir una decisión adecuada. Conforme al entendido doctrinal aplicable, sirven para erradicar cualquier manifestación de arbitrariedad administrativa en el ejercicio de las funciones de adjudicación*.* López y otros v. Asoc. de Taxis de Cayey, 142 DPR 109, 113 (1996).  En materia de derecho administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos penales.  Báez Díaz v. E.L.A., 179 DPR 605, 623 (2010).  No obstante, el estado de derecho reconoce que el procedimiento adjudicativo pertinente, debe de ser uno justo y equitativo para todas las partes involucradas. *Íd*.

## C.

Ley Núm. 2, *supra*, fue creada para asegurar la planificación ordenada de las instalaciones y servicios de salud en Puerto Rico. Esta legislación otorga la facultad que posee el Secretario de Salud al momento de aprobar un Certificado de Necesidad y Conveniencia (CNC) para el establecimiento de nuevas instalaciones de salud, cuando ello sea necesario y conveniente para la población que dichas entidades van a servir, siempre que no se afecten indebidamente los servicios existentes. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 DPR 121, 127 (1999).

Los CNC constituyen un mecanismo de planificación, mediante el cual el Secretario de Salud formula e implanta, a la vez, la política pública sobre los servicios de salud. Es decir, cuando se otorga o se deniega un CNC se considera el desarrollo de las entidades de salud en las distintas áreas regionales

establecidas*.* Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 127-129 (2002); Ruíz Hernández v. Mahiques, 120 DPR 80, 89 (1987).

Cónsono con ello, nuestro ordenamiento jurídico dispone que será necesario poseer un CNC para el establecimiento y operación de una instalación de salud. A esos efectos, la Ley Núm. 2 contiene disposiciones específicas y rigurosas que el Secretario de Salud deberá observar durante las etapas del proceso de evaluación de los certificados solicitados. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, *supra*, págs. 132-133.

El Secretario de Salud es quien establece, mediante reglamento, el procedimiento para el recibo y evaluación de las solicitudes de CNC. Art. 7 de la Ley Núm. 2, *supra,* 24 LPRA sec. 334f-2. El Reglamento Núm. 9084, *supra*, aplicable al caso que nos ocupa, rige el proceso de evaluación de las solicitudes para el otorgamiento de un CNC.

Por ser pertinente al caso de marras, es menester mencionar que el Art. XII del Reglamento Núm. 9084, *supra,* dispone lo siguiente:

> El Departamento de Salud, según facultado por la Ley 38-2017, podrá imponer multas administrativas, que no excederán de cinco mil dólares ($5,000) por ocurrencia, por cada violación de alguna disposición de la Ley de CNC o de este Reglamento. Esto incluye las multas específicas indicadas a continuación:
>
> 1. Se impondrá una multa de cien dólares ($100) diarios por cada día que una Facilidad de Salud opere sin poseer un CNC.
>
> 2. Se impondrá una multa de cien dólares ($100) diarios por cada día que una Facilidad de Salud ofrezca un Servicio de Salud sin poseer un CNC que lo autorice.
>
> 3. Se impondrá una multa de cincuenta dólares ($50) diarios por cada día que sobrepase los treinta (30) días de antelación a la fecha de vencimiento de un

CNC requeridos para presentar una Solicitud de Extensión de Término de un CNC.

4. Se impondrá una multa de quinientos dólares ($500) a toda Facilidad de Salud que no haya notificado debidamente un cambio de nombre, cambio de dirección o cambio de administrador.

5. Se impondrá una multa de cien dólares ($100) diarios por cada día que una Facilidad de Salud ofrezca un Servicio de Salud con un CNC cancelado, expirado y/o revocado.

6. Se impondrá una multa de cien dólares ($100) diarios por cada día que una Facilidad de Salud provea Servicios de Salud fuera de conformidad con lo autorizado en el CNC otorgado.

### III.

La parte recurrente, Metro Pavía, recurre ante esta Curia planteando que el Departamento de Salud erró al abrogarse jurisdicción para dilucidar la Querella Enmendada. También, indicó que el Departamento de Salud incidió a error cuando dispuso sumariamente una determinación y que impuso una multa que excede de los límites legales y reglamentarios.

Evaluado el recurso y las peticiones de ambas partes, podemos *Confirmar* el dictamen recurrido.

Tras un minucioso análisis de los documentos que obran en el expediente, constamos que el Departamento de Salud es la agencia encargada para atender las controversias presentadas como las del caso de epígrafe. La Ley Núm. 2 establece en su legislación la facultad que posee el Secretario de Salud al momento de aprobar un Certificado de Necesidad y Conveniencia (CNC) para el establecimiento de nuevas instalaciones de salud. En el presente caso, las partes recurridas indicaron en su pliego que Alivia no poseía licencia alguna para llevar a cabo los CNC, por lo cual ante dicha controversia el foro juzgador le pertenece al Departamento de Salud.

En cuanto a si el Departamento de Salud estaba facultado para disponer sumariamente luego de los procesos legales que ya habían acontecido, concluimos que no se violó el debido proceso de ley entre las partes por lo cual no erró el foro primario al disponer sumariamente. El hecho de que un Oficial Examinador haya realizado una investigación por su cuenta y emitir una opinión que luego fue acogida por el Departamento de Salud es una violación al debido proceso de ley. Según ha dispuesto nuestro ordenamiento jurídico, cuando los procesos sean administrativos el estándar revisor es menos riguroso que en los casos penales. En el caso de marras, las partes tuvieron la oportunidad de presentar sus argumentos mediante órdenes del Departamento de Salud e incluso se suscitaron varias vistas donde las partes tuvieron su debido proceso. Por lo que, las partes tuvieron las garantías mínimas constitucionales según establecidas en la Ley 38-2017, *supra*, Sección 3.1, 3 LPRA sec. 9641:

1. Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
2. Derecho a presentar evidencia.
3. Derecho a una adjudicación imparcial.
4. Derecho a que la decisión sea basada en el expediente.

Por otro lado, referente al último error señalo es menester mencionar que la parte recurrente no cuestionó la imposición de multas sino, la cuantía. Indicando que el Departamento de Salud se excedió del límite impuesto en la ley. Sin embargo, el Reglamento Núm. 9084, *supra*, faculta al Departamento de Salud a imponer multas administrativas, que no excedan de cinco mil dólares ($5,000) por ocurrencia, por cada violación de alguna disposición de la Ley de CNC o de este Reglamento. En el presente caso, el Departamento de Salud estableció a la parte recurrente la cuantía de $5,000.00 por cada región donde se trabajó sin la

autorización de los CNC por Alivia. Así que el Departamento de Salud actuó conforme a la ley.

En suma, concluimos expresamente que la parte recurrente no nos posicionó en derecho para revocar el dictamen emitido por el foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

Siendo así, sostenemos que no se cometieron los señalamientos de error planteados.

### IV.

Por los fundamentos que anteceden, se confirma la Resolución administrativa recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. La Juez Domínguez Irizarry concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones